[Civ. No. 26199.   Second Dist., Div. Three.   Apr. 22, 1963.]

MALIBU WATER COMPANY et al., Plaintiffs and Respondents, v. CHARLES A. MacGREGOR et al., Defendants and Appellants.

352

James E. West and George R. Pfeiffer for Defendants and Appellants.

Trippet, Yoakum & Ballantyne and F. B. Yoakum, Jr., for Plaintiffs and Respondents.

FILES, J.—The judgment in this action declares that the plaintiff Malibu Water Company is the owner of all water under any portion of defendants' property and enjoins defendants forever from maintaining any well on the premises or extracting any water. Defendants have appealed from the judgment.

Both the water company and defendants base their claim upon a conveyance from a common predecessor, the plaintiff Marblehead Land Company. In 1943 Marblehead granted a tract of land in Malibu Canyon to Joseph Shalhoub. This deed excepted "All water on or under said lands and every part thereof and all riparian rights to said waters." The deed further provided:

"Notwithstanding the foregoing exception of water and riparian rights to water on the lands herein conveyed, it is covenanted by Grantor that in event the Malibu Water Company, a corporation, or Grantor herein are unable to furnish or to cause water to be furnished to the lands herein conveyed in an amount sufficient for agricultural purposes and said inability continues for a period of at least ten (10) days, then in that event Grantor herein agrees that Grantee herein or his successors in interest, shall have the right or license to drill a water well or wells upon the lands herein conveyed for the purpose of extracting water therefrom for use only upon

the lands herein conveyed for agricultural or domestic purposes, so long as water is not again taken from other supply facilities of said Malibu Water Company or the Grantor herein. . . .

"The foregoing covenants in the immediately preceding two paragraphs shall be deemed covenants running with the lands for the benefit of the lands herein conveyed and binding upon the Grantor, its successors in interest and assigns, and likewise for the benefit of the Grantee his successors in interest and assigns."

Subsequently, defendants acquired 2½ acres of the property described in the Shalhoub deed. It was stipulated in the pretrial statement that defendants are the successors in interest to Shalhoub as to this property. This 2½ acres will be referred to as the Shalhoub parcel. Defendants also obtained from a man named Archer an adjacent 2½ acres on which they built a home. In the spring of 1960 defendants requested the plaintiff water company to furnish water for agricultural purposes and service was begun on July 13. On July 29 the water company mailed to its customers a notice that it would be necessary to commence rationing of irrigation water on August 1 at the rate of 1,500 gallons per acre per month. This rationing was necessary because of a shortage of water. On August 2 defendants wrote to the water company, advising that this allotment would be insufficient and that defendants' peak consumptive use would be about 400,-000 gallons per month. The letter also made reference to the well-drilling clause in the 1943 deed to Shalhoub.

Defendants' meter reading for the month of August was 73,000 gallons. A regulation of the water company authorized it to discontinue delivery of irrigation water to any consumer who has exceeded his quota until subsequent allocations equalize the average. Pursuant to this rule the water company discontinued service of irrigation water on September 15. Defendants then employed a driller to drill a well on the Shalhoub parcel. This well went into operation in November 1960.

None of the well water was used on the Archer parcel. The water company continued to furnish the water required for domestic use on the Archer parcel, where defendants' home was located. Defendants never requested or received domestic water service on the Shalhoub parcel. Defendants' testimony indicated (and there was nothing to the contrary) that they were growing alfalfa on the Shalhoub parcel and re-

quired between 150,000 and 200,000 gallons per month to maintain it. This action concerns only the claimed right of defendants to maintain a well on the Shalhoub parcel.

Prima facie the conditions set forth in the well-drilling clause appear to have been met: Neither Marblehead nor the water company is able to furnish water sufficient for defendants' agricultural purposes, the well water is being used only on the land where it is produced, and water for this land is *not being taken from other supply facilities.*

The basis of the judgment in favor of the water company is the following statement contained in the trial court's finding of fact:

"Malibu is now, and at all times since September 19, 1938, has been the owner of all water in, on, under and upon the aforesaid real property owned by MacGregors and of all riparian rights therein. All said water rights and riparian rights have by virtue of a decision of the Railroad Commission of the State of California (now called the Public Utilities Commission) duly given and made on September 19, 1938, been dedicated to a public use with respect to the area known as Malibu Canyon, including the real property owned by MacGregors."

The only evidence in the record upon which that legal conclusion could have been based is a decision of the Railroad Commission dated September 19, 1938. This decision indicates that the commission then had before it an application for an order "authorizing the conveyance by Marblehead Land Company to Malibu Water Company of certain properties used by it in the development and distribution of water. . . ." The decision of the commission was that such a conveyance be authorized; that upon the transfer Marblehead would be relieved of its functions as a public utility water corporation; and that a certificate of public convenience and necessity be granted to the Malibu Water Company to supply water within an area indicated on a certain map. The map was not produced at the trial. The "certain properties" which were to be conveyed from Marblehead to the water company are not further described either in the copy of the decision which is in evidence or by any other evidence in the record here. It is impossible to determine from this record whether the "certain properties" included any water rights or other interest in land, or whether they included only such items as pumps, pipes, and storage tanks. It cannot even be determined whether Marble-

head did in fact make the transfer which the commission consented to.

■ Since the judgment in favor of the water company rests entirely upon the trial court's conclusion that the water company has been the owner of all water under the property since September 19, 1938, and since there is no evidence to support this finding or conclusion, the judgment cannot stand.

■ Plaintiffs have argued other theories, but since the trial court made no findings to support plaintiffs' alternative theories, the action must be remanded for a new trial.

■ Plaintiffs have argued in their briefs here that the deed by which defendants acquired title was not sufficient to convey the well-drilling right. This was not an issue at the trial. The joint pretrial statement, which was adopted as a part of the pretrial order, declared that it was admitted, and no proof was required at the trial that defendants were "successors in interest" to Shalhoub. The effect of the transfers subsequent to the 1943 deed was not litigated in the trial court, and no finding was made as to what passed by those subsequent conveyances. If on a retrial plaintiffs desire to raise the contention that the well-drilling right was extinguished in some transactions after 1943, they must apply to the court for relief from the stipulation and the pretrial order based thereon under rule 216 of the California Rules of Court*.

■ After the briefs had been filed in this court, plaintiff water company applied under Code of Civil Procedure, section 956a, and rule 23(b)† for leave to present additional evidence in this court. The proffered evidence consists of a quitclaim deed dated August 28, 1938, recorded September 27, 1938, whereby Marblehead quitclaimed to the water company a number of easements. Plaintiffs offer to show by the testimony of a surveyor that the metes and bounds description in easement Number 21 in that deed includes all of the property deeded to Shalhoub in 1943. Easement Number 21 is stated to be "an easement for the drilling of water wells and the installation of pumps, pipes and other necessary appurtenances for the development of water, together with the right to pump water therefrom and distribute the same elsewhere. . . ."

It is our view that the trial court is the better place in which to receive and weigh this new evidence. Since defendants are

---

*Formerly Rules for the Superior Courts, rule 8.8.

†Formerly Rules on Appeal, rule 23(b).

not in a position to concede that the described property included the Shalhoub parcel, oral testimony must be taken. If the deed is found to be admissible counsel may wish to offer evidence of the surrounding circumstances to assist the trial court to determine what passed by the 1938 deed and how the 1938 and 1943 conveyances should be construed. The present record shows very little of the circumstances surrounding either event, but there is enough to suggest that the facts may not be as clear and simple as plaintiffs contend. The record indicates that Marblehead owns all of the stock of the water company. The two companies share an office and have one or more employees in common. Easement Number 21 of the 1938 deed, which plaintiffs have offered for the first time in this court, was specifically mentioned in the Shalhoub deed which was pleaded verbatim in defendants' answer. Marblehead's deed to Shalhoub granted the land subject to easement Number 21 (among other things) but purported to grant also a conditional right to drill a well "notwithstanding the foregoing exception." If plaintiffs' contentions in this lawsuit are correct, the well-drilling clause in the Shalhoub deed suggests a curious absent-mindedness on the part of the draftsman of that instrument.

The application for leave to produce evidence is denied. The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.