[Crim. No. 4236. Fourth Dist., Div. One. Mar. 15, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
AUDREY MARIE EGGLESTON, Defendant and Appellant.

## COUNSEL

David L. Goldin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Charles B. McKesson, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Audrey Marie Eggleston (defendant) appeals from a judgment termed a probation order imposing a fine of $100 for possession of restricted dangerous drugs, adjudged to be a misdemeanor.

Defendant pleaded guilty following denial of her motion under Penal Code section 1538.5. A second charge of transporting restricted dangerous drugs was dismissed when she pleaded guilty of possession.

The motion to suppress was submitted on the transcript of the testimony at the preliminary hearing, of which a summary is as follows:

At 7:45 p.m. on July 9, 1969, United States Immigration Inspector Acuna, on duty at the San Ysidro Port of Entry, noticed a bright yellow Toyota car with four people in it enter the United States from Mexico. As the Toyota came through the vehicle inspection lane to which he was assigned, Acuna noticed the driver of the car appeared to be very nervous; specifically, he noticed the driver's jugular vein was throbbing in a manner which appeared to be faster than normal. Acuna placed on the car a yellow sticker which signified the vehicle and its occupants were to be searched

more thoroughly at the secondary inspection station. Inspector Acuna noticed nothing particularly unusual about the person sitting next to the driver, who was identified as defendant. Neither person appeared to be under the influence and the car was not one for which Acuna had been warned to look out. He did notice that the two persons sitting in the rear of the Toyota seemed to be very young. It was light outside; the overhead lights were on; and he could see the people in the car very clearly. Inspector Acuna did not accompany defendant to the secondary area; he was sure he had not called on the intercom to communicate with the secondary area.

Mrs. Gloria C. Meza was a United States Customs Inspectress assigned to the secondary search area on July 9, 1969, during the evening hours; her first recollection of seeing defendant was in a windowless room used for searches. Inspectress Meza, upon encountering defendant in the search room, noticed nothing unusual about her, and had not received any information about her. Meza directed defendant to take her clothes off. Defendant appeared to fumble with the back of her brassiere underneath her blouse for a period of time longer than would be normally required for a woman to take off her bra. Before removing either blouse or brassiere, defendant handed Inspectress Meza a bottle of pills in a plastic bottle; after defendant had removed all her top clothing, Meza noticed she was attempting to conceal in her hand two plastic bags containing pills. Meza thought both plastic bottle and bags of pills were originally concealed within the brassiere of defendant. Thereafter defendant disrobed completely.

The plastic bags contained 32 green tablets determined to be lysergic acid diethylamide, LSD; the plastic bottle contained an orange tablet containing barbiturate and amphetamine, a green heart-shaped tablet containing barbiturate and amphetamine, and an oval yellow tablet containing no dangerous drug or narcotic.

Defendant contends that the search of her person was unreasonable and therefore illegal under the standards established by the courts of the United States governing the reasonableness of border searches. The authorities on which she relies include some in which searches of body cavities were held illegal because of a lack of objective indicia that such searches were warranted. (*Huguez* v. *United States*, 406 F.2d 366; *Morales* v. *United States*, 406 F.2d 1298; *Henderson* v. *United States*, 390 F.2d 805.)

Defendant cites *United States* v. *Guadalupe-Garza*, 421 F.2d 876, as a case holding a strip search illegal. The case is one in which the defendant was required to strip and was then subjected to a probing of his anal cavity and the forcible administration of emetics by mouth and by injection. The whole inspection process extended over a period of four hours.

A case cited by defendant for the purpose of distinguishing it is *Murray* v. *United States,* 403 F.2d 694, which held that contraband discovered tied to the defendant's arm after he had been required to remove his coat was admissible.

Nothing in the record compels the conclusion the woman officer, Meza, intended an examination of defendant's body cavities, or even a superficial examination of defendant's nude body.

We do not attempt the futile task of diluting the vigor of the holdings of *Henderson, Huguez, Morales* and *Guadalupe-Garza,*[1] nor to question the principles which inspired them.

Those cases are binding upon this court. (*People* v. *Mitchell,* 275 Cal. App.2d 351, 355 [79 Cal.Rptr. 764].)

■ The search which customs inspectors are authorized to conduct upon entry is of the broadest possible character and is governed by federal law, and there is no question of probable cause under state law. (19 U.S.C.A. § 482; *Murgia* v. *United States,* 285 F.2d 14, 18.) All persons coming into the United States from foreign countries are liable to detention and search by authorized agents of the government. (19 U.S.C.A. § 1582.)

■ We hold that within the rules laid down by the Circuit Court of Appeals in those cases the search under consideration was a reasonable one.

*Henderson* v. *United States, supra,* 390 F.2d 805, 808, states that the court assumed every person crossing the border is subject to a search of "his or her purse, wallet or pockets."

Pockets, of course, may be such that they and their openings are not visible to ocular examination of the exterior of the garments of which they are a part, both pockets and openings being on the inner side of such garments.

It is well known in law enforcement circles that women as well as men engage in the smuggling of contraband.

It is equally well known that women's garments generally are not as well supplied with pockets as those of men, and that a not unusual substitute for a pocket for something valued by a woman is within her bodice, camisole, brassiere, or whatever garment or garments she wears to cover or support her breasts.

---

[1]In *United States* v. *Johnson,* 425 F.2d 630, a search was held illegal where a container of heroin was removed from the crotch of a woman's underpants after she had been required to remove the garment. A dissenting opinion cited *Witt* v. *United States,* 287 F.2d 389.

We take judicial notice the Supreme Court of the United States has granted certiorari in *United States* v. *Johnson, supra.*

The power of the searcher may extend to a determination whether a woman is concealing contraband within her brassiere. A manual search while the brassiere is in place would seem to be more offensive than a visual examination of the brassiere after it has been removed by the wearer, if appropriate privacy within the limits of security is furnished for the removal.

The evidence here indicates it is possible that a brassiere may be removed without removing a garment that is immediately outside it.

In the case at bench it appears that defendant produced the bottle of pills before she had removed any of her clothing. It may have been taken from under the strap of her brassiere at the back.

If defendant's claim of illegality is to have any support from that fact, it would be that she produced the bottle because of the threat of the removal of her clothing. She did not testify to that effect, and the conclusion that that was her reason for producing the bottle is not compelled as a matter of law. She may have felt the production of the bottle would end the matter, leaving her in possession of the other contraband.

If it be assumed that there had been no illegal search up to the time of the production by defendant of the bottle of pills, and that that production was not the result of a threat of an illegal search, then, as a result of the production of the bottle, all the requirements would have been met for an exhaustive search including a search of the body cavities.

Even so, there was no such search, so that it becomes even more probable that no such search was threatened or intended.

The trial court impliedly found that in the first instance no search of body cavities was threatened or intended, and that no detailed scrutiny of the naked body was intended.

The judgment is affirmed.

Brown, P. J., and Ault, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 13, 1971.