UNITED STATES of America

v.

Southworth Wells SWEDE a/k/a Samuel
Cook, Simon Wesley Cook, Defendant.

No. 70 CR. 737.

United States District Court,
S. D. New York.

April 28, 1971.

**534**

Whitney North Seymour, Jr., U. S. Atty. for S. D. N. Y., for plaintiff; Arthur J. Viviani, Asst. U. S. Atty., of counsel.

Rubin, Gold & Geller, New York City, for defendant; William Gold, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendant, Southworth Wells Swede, having been indicted in three counts for unlawful possession of Lysergic Acid Diethylamide [1] (hereinafter referred to as "LSD"), and charged in another with unlawfully manufacturing the same,[2] moves pursuant to Fed.R.Crim.P. 41(e) for an order suppressing evidence allegedly seized by federal agents in violation of the First and Fourth Amendments to the United States Constitution.

Preliminary to a consideration of the legal issues raised herein, it would be useful to set forth the facts underlying the motion as summarized from the affidavits submitted by the defense and the Government and as found by the Court from the evidence adduced at a hearing conducted on February 17, 1971. At said hearing, Mr. Stephen J. Tjiong of the United States Customs Service, whose duty it is to supervise the screening of foreign mail for drugs, pornography and other dutiable merchandise, testified that on July 24, 1970, a first class envelope mailed from Zurich, Switzerland, and addressed to movant under an assumed name (Samuel Cook), was referred to him for inspection. Upon examination of the envelope, some powder escaped which responded negatively to tests for heroin and cocaine. Still suspicious that the powder was a narcotic drug, Mr. Tjiong opened the envelope and gave it and its contents to his partner, who sent a transmittal letter to the Director of the Import Compliance Unit. Although it is customary for foreign mail containing merchandise to have a declaration of content and price, the envelope involved herein contained no such declaration. On cross-examination, Mr. Tjiong testified ·that international air mail initially arrives at JFK International Airport while overseas mail arriving by ship is first unloaded at the Brooklyn Army Terminal. In either case, all such mail designated for delivery to New York City is delivered without inspection to the Manhattan General Post Office. Although there is no evidence of any written communication having been placed or found in the envelope, it is undisputed that when the envelope was opened a plastic bag containing powder was found therein.

The only other witness called at the February 17 hearing was special agent James Greenan of the Bureau of Customs, who testified that on August 11, 1970 he received an envelope addressed to movant at apartment 2, 326 West 20th Street, New York, N. Y. Accompanying the envelope was a transmittal letter indicating that it was suspected that the envelope contained marijuana. Chemical analysis, however, revealed

---

1.  21 U.S.C. §§ 321(v), 331(q) (3) (A), 333(b), 360a(c) (1).

2.  21 U.S.C. §§ 321(v), 331(q) (1), 333(b), 360a(a) and (h).

that the bag actually contained approximately 15 grams of pure LSD. The envelope was subsequently resealed with its contents, and marked for future identification. On August 13, 1971, agents Greenan and D'Ulisse spoke to the landlord of 326 West 20th Street and learned that movant resided there under yet another assumed name (Simon Wesley Cook) and was only in on Mondays. The following Monday, August 17, 1971, the landlord telephoned agent Greenan and told him that the defendant was in. The next morning, both agents went to the vicinity of 326 West 20th Street where they met Postal Inspector Linus and Mail Carrier Bowman. After the envelope was marked "Postage Due 25 cents", agent Greenan proceeded to the second floor landing of 326 West 20th Street. The mail carrier then knocked on Mr. Swede's door and stated: "Mr. Samuel Cook?"—to which movant replied affirmatively, and opened the door. Carrier Bowman again asked the defendant if he was Samuel Cook and told him he had a letter for him with 25 cents postage due. Movant acknowledged that he was Mr. Cook and the letter was delivered. A few minutes thereafter, the postal inspector and the two agents proceeded to apartment 2. Agent D'Ulisse knocked on the door, announced his authority and asked that the door be opened. A person inside the apartment was heard to be running, whereupon the agent again knocked, stated who he was, and requested entry. Getting no response, the three men forcibly entered the barren apartment and after a few moments pulled the defendant away from a window which he was leaning out of. After agent Greenan noticed that the envelope just delivered was lying on the street below, Inspector Linus retrieved the same and the defendant was arrested.

Although no search of the premises was made at this time, the apartment was secured and left under surveillance with two other agents. Subsequently the defendant's apartment and safety deposit box were searched pursuant to warrants issued upon affidavits prepared and signed by agent D'Ulisse.

Finally, agent Greenan testified that the purpose of going to defendant's apartment, pre-marking the envelope and requiring 25 cents additional postage was to make a controlled delivery of the package and then to reseize it. The arrest was allegedly predicated upon the agent's belief that the recipient voluntarily took possession of the package with knowledge of its contents and exercised dominion and control over the same.

Movant first urges that the envelope addressed to him be suppressed, contending that the search and seizure thereof violated his rights under the First and Fourth amendments to the United States Constitution.

█ Probative of this issue is the following authority, United States v. Glaziou, 402 F.2d 8 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969); United States v. Beckley, 335 F.2d 86 (6th Cir. 1964), cert. denied, Stone v. United States, 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); United States v. Sohnen, 298 F.Supp. 51 (E.D.N.Y.1969), which, when collectively considered, compel the conclusion that the envelope was lawfully seized and properly subject to a warrantless search. Since the subject envelope was international mail matter crossing domestic borders, the Court, in ruling on this motion, must be mindful that "Fourth Amendment standards applicable to mail matter moving entirely within the country are not applicable to mail matter coming in from outside the country at least where it appears that a customs determination must be made." United States v. Beckley, *supra* 335 F.2d at 88.

█ With this caveat in mind, we turn to consider whether the envelope addressed to movant was lawfully searched and seized by the customs officials. Resolution of this issue in part depends upon whether the envelope be deemed a "package" or not. Inasmuch

as the evidence adduced at the February 17 hearing undisputedly demonstrated that the envelope contained a quantity of powder, packaged in a plastic bag, and no evidence has been produced which even suggests that a letter or written communication was ever placed or found inside the envelope, the Court must conclude, for purposes of this motion, that the envelope addressed to movant was a "package". Thus we do not determine whether "[t]he Constitution * * * prevent[s] the opening of letters, as opposed to packages containing merchandise, without a search warrant". United States v. Sohnen, *supra* 298 F. Supp. at 55.

■ If a customs officer may stop a person at an international border and conduct a "border search" without having first procured a search warrant, or having probable cause to believe that the person searched has committed a crime, United States v. Glaziou, *supra* 402 F.2d at 12, it must follow that a package making a similar crossing is subject to at least the same inconvenience. Certainly the Constitution confers no greater rights on packages than people. Since the term "border" or "border area" is dependent upon the existing factual circumstances, it may not be subject to precise limitations or clearly marked boundary lines. United States v. Glaziou, *supra* at 12. In the instant case I rule as did Judge Weinstein in United States v. Sohnen, *supra* 298 F. Supp. at 55, that mail sorting rooms at or near a port of entry are border areas. This appears consonant with this circuit's ruling that a "border area reasonably includes * * * the checkpoints at all international ports of entry and a reasonable extended geographic area in the immediate vicinity of any entry point." United States v. Glaziou, *supra* 402 F.2d at 12–13.

■ Thus, since the package came into a border area and aroused the suspicion of the customs officers, it was subject to a search while in that area.

*See* United States v. Glaziou, *supra* at 13–14. The defendant's constitutional rights were not violated by the opening of foreign mail addressed to him which the customs agents had ample grounds to suspect contained contraband, as opposed to private communications; his "person, home, office and channels of communicating his thoughts and ideas were left inviolate." United States v. Sohnen, *supra* 298 F.Supp. at 55.

■ Insofar as movant contends that postal and customs regulations [3] were violated by the searches, suppression would still be unwarranted since these regulations do not "rise to the level of national policy so as to require a *per se* rule of exclusion". United States v. Sohnen, *supra* at 56.

■ I further reject the contention that detention of the letter for a period of over one week by the customs agents constituted an unlawful seizure under United States v. Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970). Since the *Van Leeuwen* Court considered a delay of domestic mail, the holding and dicta therein are inapplicable to the facts of the instant case. More pertinent to and dispositive of the issue raised herein is the holding of the Court of Appeals for the Sixth Circuit in United States v. Beckley, *supra*, wherein it was determined that a delay both prior to, and after the opening and rewrapping of a package of international mail was lawful and constitutionally permissible. The Court noted that a delay incident to a lawful customs search violated no federal statutes and regulations, and that a delay subsequent to rewrapping and forwarding a package, lawfully searched, was equally permissible in view of the fact that the customs officers had a duty to confiscate the contraband. United States v. Beckley, *supra* 335 F.2d at 89–90.

Similarly unconvincing is defendant's argument that the evidence seized from his apartment should be suppressed be-

---

**3.** 39 C.F.R. §§ 261.3, 262.1; 19 C.F.R. § 9.5.

cause the arrest was merely a pretext under which a general search was conducted. Since Mr. Swede's apartment was not searched at the time he was arrested, but rather subsequent to that time and pursuant to a warrant, this argument would appear frivolous. Moreover, since the warrant has not been challenged herein and its validity was not within the scope of the hearing conducted on this motion,[4] nothing more need be said with regard to this contention.

Finally, we consider movant's attack upon the legality and constitutionality of his arrest and the reseizure of the envelope pursuant thereto. It seems plain that Mr. Swede could not be arrested prior to his acceptance of the letter since it is not a crime to be the addressee of contraband. It was only after the customs agents were informed that movant was in the apartment, and he accepted the envelope (known by the agents to contain LSD) under an assumed name, paid the additional postage, refused to admit the federal authorities, and thereafter was heard running away from the entrance to the apartment, that an arrest could properly be made with sufficient probable cause to believe that the defendant had committed a felony.[5] The envelope was, of course, then subject to seizure from the defendant, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). That defendant may have abandoned the envelope is of no consequence herein since the agents had probable cause to enter and place Mr. Swede under arrest. That is, movant did not involuntarily try to dispose of the evidence as a result of the federal agents' unlawful entry. Cf. Fletcher v. Wainwright, 399 F.2d 62 (5th Cir. 1968); Hobson v. United States, 226 F.2d 890 (8th Cir. 1955).

Accordingly, and for the foregoing reasons, defendant's motion is in all respects denied.

So ordered.

---

4. Transcript of Hearing conducted on February 17, 1971 at 57–58. It should be noted, however, that the evidence adduced at the hearing would appear to support the issuance of the warrant.

5. This distinguishes the instant situation from that facing the Court in Johnson v.

United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) wherein the Government conceded that probable cause to make an arrest did not exist until the agents unlawfully entered defendant's premises.