[Civ. No. 13085. Fourth Dist., Div. Two. July 18, 1973.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
MICHAEL BOYD RANDALL et al., Real Parties in Interest.

524

**COUNSEL**

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Frank L. Williams, Jr., Public Defender, Gale P. Hickman, Deputy Public Defender, Russell E. Parsons and Michael D. Pursell for Real Parties in Interest.

**OPINION**

**KERRIGAN, J.**—James Henry Clay, Calvin Larry Delaney, John Charles Gale, Edward Jeffery Lange, and Michael Boyd Randall (real parties in interest who will be described herein as "defendants"), together with 41 other defendants, were charged in two multiple-count indictments with

conspiracy to violate various sections of the Health and Safety Code involving narcotics and with violation of the sections.

Defendants moved in the superior court for suppression of certain evidence (Pen. Code, § 1538.5). The superior court granted the motion on March 5, 1973. We denied without opinion the People's petition for writ of mandate to compel the superior court to set aside its order suppressing the evidence. On May 16, the Supreme Court granted a hearing, directed that an alternative writ of mandate issue as prayed, and retransferred the matter to this court for a review on the merits. On May 23, we issued the alternative writ of mandate and ordered respondent court to show cause why a peremptory writ should not issue.[1]

George R. Corley, special agent of the Bureau of Customs, was the sole witness for the prosecution at the suppression hearing. On March 19, 1969, while he was assigned to Los Angeles International Airport to investigate importation of contraband, he received a telephone call from a customs inspector at the United Airlines freight terminal, saying he had two surfboards "which he thought possibly contained narcotics." Agent Corley went to the United Airlines terminal, accompanied the inspector to the enclosed area where merchandise is kept until cleared by customs, and inspected the two boards in question.

The manifest showed that the surfboards had been shipped from Karachi, Pakistan, and transshipped at New York. Corley was not himself a surfer, but had examined and actually handled about 25-50 surfboards on prior occasions in the course of his duties. In particular, he himself had found hashish in a surfboard shipped from Pakistan within the previous two months. On one or two later occasions, he had slit open surfboards from high narcotics areas, but had not found any contraband. He noticed that the two boards appeared not to have been used, because the skegs were smooth and unscratched. He lifted both boards and noted that they appeared to be about 20 pounds heavier than other boards he had handled of the same length. Because of these factors, he suspected the board might contain contraband and stuck his pocketknife into it.[2]

---

[1]The alternative writ erroneously refers to the "order to suppress made on February 28, 1973." After two days of hearing, the court granted the motion on February 27. On February 28, the court granted the district attorney's motion to reconsider, in effect vacating its order of the previous day. On March 5, after further hearing, the court again granted the motion to suppress, saying, ". . . the motion to suppress the evidence is granted as before." Whether the motion be deemed to have been granted on February 27, February 28, or March 5 is of no consequence, inasmuch as there is no confusion among the parties and the court as to just what order is referred to.

[2]Agent Corley also testified that he noticed a raised area along the center of the board's bottom covering three-fourths of its length, about eight inches wide and one-

When Agent Corley's knife penetrated the surfboard, there was a rush of gas from inside, with an odor which he recognized as that of marijuana. He then cut out a one-inch square and pried out some of the substance inside, which proved to be hashish. He replaced the plug, filled the holes with candlewax, and replaced the boards in the cloth sacks in which they had been wrapped. When the consignee, codefendant Ashbrook, claimed the boards the following day, he was followed by several federal agents and, with several other persons, arrested in the Hemet area of Riverside County.[3] A total of 39 pounds of hashish worth $100,000 was removed from the two boards.

In suppressing the hashish and the surfboards, the court found that, although the search was a "border search," permitted by section 482 of title 19 of the United States Code, Agent Corley did not have sufficient "reasonable cause to suspect" that contraband would be found to justify his sticking his knife into the board.

The People contend (1) that defendants have no standing to challenge the validity of the search, and (2) that in any case, the agent had a sufficient suspicion to justify the search.

## STANDING

The People cite several United States Supreme Court decisions, and quote at length from *Alderman* v. *United States* (1969) 394 U.S. 165 [22 L.Ed.2d 176, 89 S.Ct. 961] for the proposition that only persons aggrieved may challenge the legality of a search. "[T]he general rule [is] that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." (*Alderman* v. *United States, supra,* 394 U.S. 165, 174 [22 L.Ed.2d 176, 187]; see also *Brown* v. *United States* (1973) 411 U.S. 223, 230 [36 L.Ed.2d 208, 214, 93 S.Ct. 1565, 1569-1570]; *Jones* v. *United States* (1960) 362 U.S. 257 [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233].) If defendants were being prosecuted in the federal courts, they would have no standing in the circumstances of this case (see *United States* v. *Wing* (9th Cir. 1971) 450 F.2d 806, 810, cert. den., 405 U.S. 994 [31 L.Ed.2d 462,

---

eighth to one-fourth inch high, and that he held the board up to the sunlight and could see what appeared to be a solid mass in the same position inside. The trial court specifically found that this testimony was untrue. We are bound by the trial court's factual finding. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

[3]The propriety of the officers' decision not to seize the hashish immediately, but to follow the consignee in hope of obtaining further evidence is not questioned in this proceeding. It is permissible to allow contraband to reach its destination. (*Chapman* v. *United States* (10th Cir. 1971) 443 F.2d 917, 920; *United States* v. *Beckley* (6th Cir. 1964) 335 F.2d 86, 90.)

92 S.Ct. 1267]; *Stassi* v. *United States* (5th Cir. 1969) 410 F.2d 946, 952), but in the courts of the State of California the rule is otherwise.

■ Any criminal defendant brought before the California courts may challenge the admissibility of any evidence against him on Fourth Amendment grounds. This rule is not found within the Fourth Amendment itself (*Alderman* v. *United States, supra,* 394 U.S. 165, 171-176 [22 L.Ed.2d 176, 185-188]), but has been declared by the California Supreme Court as a rule of procedure for the courts of this state. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 155-157 [98 Cal.Rptr. 649, 491 P.2d 1].) The states remain free, under the *Alderman* decision and the United States Constitution, to establish their own rules of criminal procedure, and specifically "to provide that 'illegally seized evidence is inadmissible against anyone for any purpose.'" (*Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, 155, quoting *Alderman* v. *United States, supra,* 394 U.S. 165, 175 [22 L.Ed.2d 176, 188].)

■ The vicarious exclusionary rule has two purposes: (1) to deter law enforcement officers from violating constitutional provisions against unreasonable searches, and (2) "to relieve the courts from being compelled to participate in such illegal conduct." (*Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, 155-156.) The People might argue (though they do not) that the first of these reasons is inapplicable because the officers to be deterred are not state officers but federal customs officials. Such reasoning would appear to be contrary to the rationale of *Elkins* v. *United States* (1960) 364 U.S. 206 [4 L.Ed.2d 1669, 80 S.Ct. 1437], which repudiated the "silver platter" doctrine, but regardless of the applicability of the first reason, the second applies. The courts of this state will not condone violations of the Fourth Amendment by receiving evidence so obtained.

The United States Supreme Court has held that due process may require state courts to exclude certain evidence unfavorable to a criminal defendant (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684]) or to admit certain evidence favorable to an accused (*Chambers* v. *Mississippi* (1973) 410 U.S. 284 [35 L.Ed.2d 297, 93 S.Ct. 1038]), but our attention has not been drawn to any decision holding that due process or any other constitutional principle requires a state court to *admit* evidence *against* a criminal defendant.

The motion to suppress the evidence was properly before the superior court.

THE SEARCH

■ Although standing to raise the issue is governed by the law of this state, the validity of the search must be determined in accordance with

federal law (*People* v. *Eggleston* (1971) 15 Cal.App.3d 1026, 1029 [93 Cal.Rptr. 776] cert. den., 404 U.S. 1002 [30 L.Ed.2d 555, 92 S.Ct. 569]; *People* v. *Mitchell* (1969) 275 Cal.App.2d 351, 355 [79 Cal.Rptr. 764] cert. den., 397 U.S. 1053 [25 L.Ed.2d 669, 90 S.Ct. 1394]), because the search in question was a "border search," which is governed by federal statutes.[4] The term "border search" is "the courts' shorthand way of defining the limitation that the Fourth Amendment imposes upon the right of customs agents to search without probable cause," a right that is "predicated on the right and obligation of the government . . . to prevent the importation of contraband or of undeclared, and therefore untaxed, merchandise, and on the universal understanding that persons, parcels and vehicles crossing the border may be searched." (*United States* v. *Weil* (9th Cir. 1970) 432 F.2d 1320, 1323, cert. den., 401 U.S. 947 [28 L.Ed.2d 230, 91 S.Ct. 933].)

Defendants assert that since Los Angeles "at best may be characterized as a port of entry, far removed from any international border," the search cannot be a border search. This contention has been consistently rejected in the cases. ■ The border area includes not only land border crossing checkpoints, but also checkpoints at all ports of entry (*United States* v. *Glaziou* (2d Cir. 1968) 402 F.2d 8, 12-13 [6 A.L.R. Fed. 302], cert. den., 393 U.S. 1121 [22 L.Ed.2d 126, 89 S.Ct. 999] and international mail handling rooms. (*United States* v. *Beckley* (6th Cir. 1964) 335 F.2d 86, 89, cert. den., *sub nom. Stone* v. *United States,* 380 U.S. 922 [13 L.Ed.2d 807, 85 S.Ct. 921]; see also *Almeida-Sanchez* v. *United States* (1973) 413 U.S. 266 [37 L.Ed.2d 596, 93 S.Ct. 2535].)

■ Although a border search must meet the Fourth Amendment test of reasonableness, it requires neither a warrant nor probable cause, and may be conducted on the *mere suspicion* of customs agents that contraband or undeclared, dutiable articles may be present. (*United States* v. *Doe* (2d Cir. 1973) 472 F.2d 982, 984; *United States* v. *Glaziou, supra,* 402 F.2d 8, 12. See also *Carroll* v. *United States* (1925) 267 U.S. 132, 154 [69 L.Ed. 543, 551-552, 45 S.Ct. 280, 39 A.L.R. 790]; *Boyd* v. *United States* (1886) 116 U.S. 616, 623 [29 L.Ed. 746, 748, 6 S.Ct. 524].)

The quantum of suspicion that will satisfy the reasonableness test depends on the facts and circumstances of each case. (See *Alexander* v. *United States* (9th Cir. 1966) 362 F.2d 379, 382, cert. den., 385 U.S. 977 [17 L.Ed.2d 439, 87 S.Ct. 519].) The greater the intrusion on a per-

---

[4]See, e.g., 19 United States Code sections 482, 1467, 1496, 1499, 1581, 1582.

son's reasonable expectation of privacy, the greater the suspicion must be. (See *Henderson* v. *United States* (9th Cir. 1967) 390 F.2d 805, 808 (search of body cavities); Note (1968) 77 Yale L.J. 1007.)

In the instant case the intrusion consisted of sticking a knife into a surfboard, making a small, repairable slit which, if not repaired, would have caused serious water damage to the board. When he heard the rush of gas from the board and smelled the distinctive odor of marijuana, the agent had probable cause to seize the board and its contents, so that the later, greater intrusion of cutting a one-inch square from the board is not in question here.

The superior court based its determination of the reasonableness of the search on section 482 of title 19, United States Code.[5] Defendants argue here, as they did in the superior court, that the cited statute requires a greater measure of suspicion for search of merchandise than for search of a vehicle or person. This argument was rejected in *United States* v. *Doe, supra,* where the court said, "The argument . . . fails to appreciate that a search of this kind is far less intrusive than searches of individuals or of their immediate effects." (472 F.2d 982, 984-985.) *Doe* upheld the seizure of cocaine from a package labeled "old clothing," which the customs inspector opened merely because such packages often contain dutiable new clothing. (See also *United States* v. *Swede* (S.D.N.Y. 1971) 326 F.Supp. 533, 536.)

■ Not even suspicion is required to justify a nonintrusive inspection of persons, their vehicles and effects at a border crossing. (*Henderson* v. *United States, supra,* 390 F.2d 805, 808; 19 U.S.C. § 1496.) The fact of entry alone is sufficient reason for such a search. (*Klein* v. *United States* (9th Cir. 1973) 472 F.2d 847, 849; *Witt* v. *United States* (9th Cir. 1961) 287 F.2d 389, 391, cert. den., 366 U.S. 950 [6 L.Ed.2d 1242, 81 S.Ct. 1904].) When merchandise is received from abroad, it must be held under

---

[5]"482. Search of vehicles and persons. Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall *suspect* there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may *have a reasonable cause to suspect* there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial." (Italics added.)

bond "until it has been inspected, examined, or appraised," and "[n]ot less than one package of every invoice" must be "opened and examined" for customs inspection. (19 U.S.C. § 1499.) Clearly, it was not only the right but the duty of Agent Corley to inspect the surfboards.

■ The question remains whether it was reasonable under the circumstances for Agent Corley to puncture the surfboard with his knife. We hold, as a matter of law, that on the basis of the facts found true by the superior court, Agent Corley's action was reasonable. It is a matter of judicial record that Karachi, Pakistan is a source from which hashish has been imported into the United States in recent years. (See *United States v. Becker* (D.Mass. 1972) 347 F.Supp. 1039, 1040; *United States v. Kayser* (S.D.Ga. 1970) 322 F.Supp. 52, 52-53.) Agent Corley had actually discovered hashish in a surfboard airshipped from Pakistan within two months before the instant search. These facts alone warranted suspicion of any surfboards arriving from Pakistan, and the fact that other surfboards arriving from the same area of the world had proved not to contain contraband was not sufficient in itself to allay that suspicion.

When Agent Corley picked up one of the surfboards to inspect it, he noticed that it was considerably heavier than other boards of the same length that he had handled on prior occasions. While the court found that there was an explanation for the weight difference (defendant Gale had testified as a surfboard expert that some boards are built heavier to withstand pounding on the rocky shores of Northern California), probable cause to arrest or search must be based on the facts and circumstances *as they appeared to the officer at the time. (Beck* v. *Ohio* (1964) 379 U.S. 89, 91 [13 L.Ed.2d 142, 145, 85 S.Ct. 223]; *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 821 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) A fortiori, the same standard applies to a customs officer's reasonable suspicion that contraband may be present. There was no evidence that Agent Corley was possessed of defendant Gale's specialized knowledge of surfboards. He admitted that, though he had actually handled 25-50 surfboards in the course of his duties, he was not himself a surfer. When he felt a surfboard 20 pounds heavier than those to which he was accustomed, it was entirely reasonable for him to suspect that the board contained something out of the ordinary which imparted the extra weight. Although the knife puncture was an intrusive search in that it necessarily damaged the board, it was justified by the circumstances.[6]

---

[6]It is unnecessary to decide whether knowledge of previous efforts to import hashish unlawfully concealed in a surfboard would in itself provide sufficient reasonable suspicion to justify sticking a knife into the board. Nondestructive testing, such

This result is consistent with other cases in which intrusive searches have been upheld. In *Bible* v. *United States* (9th Cir. 1963) 314 F.2d 106, 108, cert. den. 375 U.S. 862 [11 L.Ed.2d 89, 84 S.Ct. 131] the fact the defendant "appeared nervous" was held sufficient reason to require him to disrobe, certainly a more intrusive invasion of his privacy than that which we approve in the case under review. (See also *Shorter* v. *United States* (9th Cir. 1972) 469 F.2d 61, 63-64; *Jones* v. *United States* (9th Cir. 1968) 400 F.2d 134, 135, vacated on other grounds 395 U.S. 462 [23 L.Ed.2d 445, 89 S.Ct. 2022].) In *United States* v. *Chabot* (2d Cir. 1951) 193 F.2d 287, 290-291, the court found that a car, heavily weighted in the rear with fenders which sounded peculiar when tapped, provided "sufficient cause to authorize a more thorough *and even dismantling search*" (italics added) which revealed gold sought to be illegally exported.

*United States* v. *Becker, supra,* 347 F.Supp. 1039, is a case with facts strikingly similar to those involved herein. There, six suitcases were airshipped from Karachi to Boston via New York, where as here, they were transhipped by a different airline; acting on a tip, customs agents at Boston searched the suitcases and found hashish concealed within false bottoms; the defendants' motion to suppress was denied, the district court finding "reasonable cause to suspect" presence of the hashish. (*Ibid.* at p. 1042.)

The search was reasonable under the circumstances.

Let a peremptory writ of mandate issue ordering the superior court to vacate and set aside its order suppressing evidence dated March 5, 1973, in the case of People v. Randall, action Nos. C-28976 and C-29725. The alternative writ is discharged.

Gardner, P. J., and Tamura, J., concurred.

---

as the spectroscopic examination conducted before opening the package of gold coins in *United States* v. *Sohnen* (E.D.N.Y. 1969) 298 F.Supp. 51, 53, would appear to be reasonable in the case of imported merchandise with no particularized suspicion whatever.