[Crim. No. 23347. Second Dist., Div. Five. Oct. 29, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
JAY KOSOFF, Defendant and Respondent.

## COUNSEL

David D. Minier, District Attorney, and Patrick J. McKinley, Deputy District Attorney, for Plaintiff and Appellant.

Whatley, Roden, Monk & Johnson and Stanley M. Roden for Defendant and Respondent.

## OPINION

**ASHBY, J.**—Defendant was charged in a three-count information with possession of marijuana in violation of former Health and Safety Code section 11530, possession for sale of marijuana in violation of former section 11530.5, and possession of narcotic paraphernalia in violation of former section 11555. The trial court granted defendant's motion under Penal Code section 1538.5 to suppress evidence and thereafter dismissed the case against defendant under Penal Code section 1385. The People have appealed. (See Pen. Code, § 1238, subd. (a)(7).)

On February 25, 1970, a search warrant issued authorizing the search of defendant's apartment, automobile and person, based upon the affidavit of George Bregante, a deputy sheriff of Santa Barbara County. The affidavit stated that on February 20, 1970, Bregante received a call from United States Customs Agent Michael Peel who informed Bregante that on February 5 a package addressed to Miss Jeannie Kosoft (*sic*), 6636 Pasado, Apartment B, Goleta, California, had arrived in Seattle, Washington, through the international mails. The package indicated that it was from Sgt. Ernest Johns, Serial 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, Company B, 1/38th Infantry, Second Division, APO San Francisco 96224. Agent Peel stated that this package had been opened by Joseph O'Brien, a "Customs opener-verifier" pursuant to "numerous US Customs Code sections and Customs regulations covering the inspection of International Mail." On opening the package O'Brien had discovered a pillow which contained a plastic bag with a green leafy substance believed to be marijuana. One week later O'Brien opened another parcel, this one addressed to Mr. and Mrs. J. Kosoft (*sic*) at the same Pasado address, purportedly from PFC John Mason, Serial 622-43-729, Company B, 1/38th Infantry, Second Division, APO San Francisco 96224. O'Brien again found a plastic bag containing a green leafy substance believed to be marijuana.

O'Brien sent the parcels to United States Customs in San Pedro, California, where on February 18, Agent Peel photographed the packages and contents, removed a sample of the green leafy substance from each, and turned the samples over to a Customs Bureau chemist who examined the material and found it to be marijuana.

Agent Peel sent the two packages to the Goleta post office where they were received by Gordon McDonald, assistant superintendent of mails. Peel sent the withdrawn samples and photographs of the packages and contents to Sergeant Bregante. Bregante examined the samples of vegetable matter and formed the opinion that it was marijuana.

When Superintendent McDonald received the packages from the Customs Bureau they were sealed in cellophane. He did not open the packages. He did, however, show the exterior of the packages to Sergeant Bregante on February 24. Sergeant Bregante observed that the addresses on the packages were as they had been reported to him by Agent Peel.

On February 25 the two parcels were delivered to 6636 Pasado, Apartment B, by a mail carrier under observation by Detectives Dickey and Prince. Prince observed defendant accept the packages at approximately 9:30 a.m. Fifteen to twenty minutes later Detective Prince observed defendant carry both packages out of the apartment and place them in a Corvette parked in front of the residence.

Sergeant Bregante secured a search warrant then executed it, finding marijuana in the packages in the Corvette, and narcotics paraphernalia (pipes), apparently in the residence.

This is the second time this case has been before this court. Previously the trial court granted defendant's motion under Penal Code section 1538.5 on the ground that defendant had been entrapped because he had not been given the opportunity to open the packages and inspect the contents in the presence of postal or law enforcement authorities and to acknowledge or deny ownership or knowledge of the marijuana. The trial court then purported to dismiss the case under Penal Code section 1385. On appeal the order of the trial court was reversed.[1] The court held that entrapment has no relevance to the sole issue in a hearing under Penal Code section 1538.5 when a warrant has been issued, that is, whether the search was unreasonable because there was not probable cause for the issuance of the warrant. The order was reversed with instructions to the trial court to redetermine the motion under Penal Code section 1538.5.

Upon redetermination the trial court based its order granting the section 1538.5 motion and dismissing the case under Penal Code section 1385 upon two grounds: (1) That the opening of the package by United States Customs was in violation of customs regulation and the Fourth Amendment, and (2) "The participation of the postal employees and the Sheriff's officers in the opening of the packages, 'setting up' the defendant, were in violation of Fourth Amendment rights." We will discuss these grounds in inverse order.

■ The second justification offered by the trial court was clearly erroneous. There was no evidence that postal or sheriff's employees engaged

---

[1]By Division Two of this court in an unpublished opinion, *People* v. *Kosoff,* 2d Criminal No. 20263.

in any unauthorized opening of the packages. As pointed out above, the packages were sealed when received by post office Superintendent McDonald, and he and Sergeant Bregante merely observed the exterior of the packages prior to their delivery to defendant. The packages were seized from defendant's automobile pursuant to a warrant, and it is the validity of the warrant which is in issue here. The trial court's memorandum of decision indicates that the court continued to be concerned with what it believed to be police unfairness in having the package delivered to defendant under circumstances which might make it difficult for defendant to establish that he had no knowledge of its contents and did not arrange for its being mailed to him. This, however, relates to the proof of the necessary elements of the crime as to defendant's intent. While that may be an issue in the case, it is not an issue of probable cause for issuance of the search warrant. It is not the issue for determination in a motion to suppress evidence under Penal Code section 1538.5. It is not an issue of Fourth Amendment rights. Therefore the trial court's ruling must stand or fall based upon the court's first justification, the asserted illegality of the customs search.

We therefore turn to the question of whether the search of the package by a United States Customs agent was contrary to the Fourth Amendment. It is conceded that there was nothing suspicious about the outside appearance of the package and that it was opened by the customs agent without probable cause to believe it contained contraband. ■ As we recently stated, however, in *People* v. *Sloss,* 34 Cal.App.3d 74, 81 [109 Cal.Rptr. 583], searches by United States Customs agents of packages coming into our nation's borders do not require probable cause. Section 1499 of title 19 of the United States Code authorizes examination of imported merchandise and requires that not less than one package in every 10 must be examined unless the Secretary of the Treasury is satisfied that examination of a lesser proportion will amply protect the customs laws. As stated in *United States* v. *Sohnen* (E.D.N.Y. 1969) 298 F.Supp. 51, 54, "A government has a well-recognized right to conduct customs searches of persons and merchandise as they enter the country. *See* Carroll v. United States, 267 U.S. 132, 149-154. . . . [¶] Exercising this historical customs power, Congress has conferred, and the courts have recognized, broad authority in customs officials to conduct border searches without a warrant and without a showing of probable cause. [Citations.]" In *Henderson* v. *United States* (9th Cir. 1967) 390 F.2d 805, 808, it was stated: ". . . it is too well established to require citation of authority that such searches are unique, that the mere fact that a person is crossing the border is sufficient cause for a search. Thus every person crossing our border may be required

to disclose the contents of his baggage, and of his vehicle, if he has one. The mere crossing of the border is sufficient cause for such a search. Even 'mere suspicion' is not required."

As pointed out in the leading case of *United States* v. *Beckley* (6th Cir. 1964) 335 F.2d 86, 89, cert. den., 380 U.S. 922 [13 L.Ed.2d 807, 85 S.Ct. 921], "[t]here seems to be no reason why these principles should not apply to mail coming into the country, especially where, as here, there is a representation on the package that it contains merchandise." In *United States* v. *Swede* (S.D.N.Y. 1971) 326 F.Supp. 533, 536, it was said: "If a customs officer may stop a person at an international border and conduct a 'border search' without having first procured a search warrant, or having probable cause to believe that the person searched has committed a crime [citation], it must follow that a package making a similar crossing is subject to at least the same inconvenience. Certainly the Constitution confers no greater rights on packages than people." There is nothing unreasonable about the search of a proportion of incoming packages, selected at random and without probable cause or suspicion. ". . . Unless such packages were spot-checked, the international mails would provide a broad highway for wanton and wholesale violations of our customs laws." (*United States* v. *Doe* (2d Cir. 1973) 472 F.2d 982, 985, cert. den. 411 U.S. 969 [36 L.Ed.2d 691, 93 S.Ct. 2160].) "A quick and expeditious method of examining people and goods entering the country is essential if customs regulations and laws against smuggling are to be enforced without undue embarrassment and delay to travelers and without clogging mails and other conduits of goods from abroad." (*United States* v. *Sohnen, supra,* 298 F.Supp. at p. 54.) Thus the Fourth Amendment is not violated by a United States Customs search of incoming mail without probable cause. (*United States* v. *Beckley, supra; United States* v. *Sohnen, supra; United States* v. *Swede, supra.*)

Defendant nevertheless argues that the customs search in question was illegal and offended the Fourth Amendment because it was not conducted in conformance with certain regulations of the United States Bureau of Customs and the Post Office Department. At the time the packages were opened in the instant case, customs regulations, section 9.5 of title 19 of the Code of Federal Regulations (1970) (28 Fed. Reg. 14659, Dec. 31, 1963), provided as follows: "(a) The importation of merchandise in sealed parcels (other than parcel post) shall be permitted if the sealed letter or other sealed parcel bears on the address side thereof the label, Form C 1, provided for by the Universal Postal Convention or the endorsement 'May be opened for customs purposes before delivery to the addressee,' or words of similar purport definitely waiving the privacy of the seal and indicating that the

parcel may be opened by customs officers without recourse to the addressee. [Fn. omitted.] [¶] (b) When a sealed envelope or other parcel (other than parcel post) believed to contain merchandise is not endorsed or labeled as required, the postmaster will detain it in his custody and request the addressee to furnish written authority for a customs officer to open the parcel in the presence of a representative of the postmaster. If the addressee does not furnish such written authority within 30 days after the date of notice by the postmaster or within such further time as may be allowed, the parcel will be treated as undeliverable mail matter."

At the time of the search herein, a post office regulation, section 261.3 of title 39 of the Code of Federal Regulations (1970) (32 Fed. Reg. 12278, Aug. 24, 1967), provided as follows: "(a) *Authority to open sealed articles.* Sealed letters and letter packages containing merchandise should bear a green label (Form C 1) or an endorsement permitting the customs officer to open the article for examination. In the absence of a label or endorsement, the post office will obtain the addressee's signed authority for opening on Form 2921, 'Held Notice—International Mail.' If such authority is not granted within 15 days after the first notice, send a second notice. If no response is received from the second notice after an additional 15-day period, endorse the article 'Unclaimed' and return it to origin. Sealed parcel post is opened without any formality."

The People do not contend that the package was mailed parcel post so as to fall within the exception to these regulations. Had the package been mailed at less than first class rates, it would have constituted consent to postal inspection of the contents. (39 C.F.R. §§ 125.2(e), 134.8(a), 135.7; *Santana* v. *United States* (1st Cir. 1964) 329 F.2d 854, 856, cert. den. 377 U.S. 990 [12 L.Ed.2d 1044, 84 S.Ct. 1915].) ▮ The mailing of the package at first class rates did not, however (aside from the asserted effect of the above quoted regulations), immunize it against customs inspection. The protection available to first class mail moving entirely within the country does not apply to mail coming in from outside which is believed to contain merchandise. (*United States* v. *Beckley, supra,* 335 F.2d 86, 88; *United States* v. *Sohnen, supra,* 298 F.Supp. 51, 55; *United States* v. *Swede, supra,* 326 F.Supp. 533, 535.) Here the package was mailed from a soldier in Vietnam. Although a postal regulation (39 C.F.R. § 112.1) defines "domestic mail" to include mail from Army-Air Force post offices (APO), it was not intended to exempt packages mailed from soldiers in Vietnam from customs treatment, particularly in light of the well-known availability of narcotics in that country. Section 9.2 of title 19 of the Code of Federal Regulations provides that parcels of all classes of mail believed to contain articles liable to customs duty shall be given customs treatment.

Assuming therefore that the above quoted regulations (19 C.F.R. § 9.5 and 39 C.F.R. § 261.3) were applicable, it is unquestioned that the procedure specified in those regulations was not followed here. The package did not contain Form C 1 authorizing inspection for customs purposes, nor did the post office send to defendant the "Held Notice—International Mail" requesting authority to open the package. The question before us is whether the apparent violation of these regulations rendered the customs search illegal and in violation of defendant's Fourth Amendment rights, and invalidated the search warrant procured on the basis of the customs search.

Of interest in our determination of this question is the fact that the regulations in question have been repealed. On June 22, 1971, the regulations were amended and the procedure of requesting written authority from the addressee to open any package which lacked an express endorsement to that effect was eliminated. Section 9.0 of title 19 of the Code of Federal Regulations was added to include all "envelopes, sealed or unsealed, arriving in the international mail" within the scope of mail subject to customs examination, and section 9.5 was substantially rewritten. (36 Fed. Reg. 11850, June 22, 1971.) The postal regulations were also substantially rewritten to provide that "[a]ll mail originating outside the customs territory of the United States is subject to customs examination" and the responsibility on the part of the post office to request authority for customs officials to open the packages was eliminated. (36 Fed. Reg. 11851, June 22, 1971.) The purpose of the amendment to the regulations was explained by the general counsel of the Post Office Department as follows: "Existing regulations provide that, before sealed articles of foreign origin which are believed to contain prohibited or dutiable matter may be opened, the consent of the addressee must be obtained, unless the article is endorsed by the sender to permit opening. If the consent is not given, the article is returned to its sender if known. The administration of these regulations with respect to articles believed to contain matter prohibited because obscene, has been suspended since January 21, 1971, because of doubts as to validity of their enforcement in the light of the decision of the Supreme Court in *Blount* v. *Rizzi,* 400 U.S. 410 (1971). *The Commissioner of Customs, moreover, has stated that the long recognized authority of the Bureau of Customs to open sealed letters arriving in the international mail has been inhibited by the presence of these regulations.* [¶] In lieu of the current procedures, the proposed amendments provide for the submission directly to customs officials for customs treatment, including examination, of all articles of mail originating outside the customs territory of the United States which are believed to contain prohibited or dutiable matter. The

proposed amendments do not authorize the opening of any sealed articles by a postal officer or employee." (36 Fed. Reg. 11850-11851, June 22, 1971; italics added.)

As indicated above, the authority of customs officials to open and inspect incoming mail from abroad is longstanding. We think the amendment of the regulations and the explanation by the general counsel of the Post Office Department are persuasive that the former regulations were never intended to cast any doubt upon that authority. In interpreting the effect of the former regulations we must give paramount consideration to the intent with which they were authored. We do not believe it is reasonable to construe the former regulations as intending to render illegal a search by a customs officer of a first class package for import into the United States.

Moreover it has been squarely held by the federal courts that violation of the regulations does not render the search illegal or in violation of the Fourth Amendment or require the fruits of such search to be excluded from evidence in court. In *United States* v. *Beckley, supra,* 335 F.2d 86, a sealed package was mailed air parcel post from the Canal Zone to Detroit. The package was searched by customs authorities in Miami, rewrapped and sent on to Detroit, where it was delivered to Beckley's home, and a search warrant was obtained authorizing the seizure of the package and contents from the home. It was argued that the delay of the package between Miami and Detroit for customs inspection and the failure to place a stamp on the package indicating that it had been opened was in violation of federal statutes and regulations. The court held that the alleged violation of federal statutes in delaying the package and failing to confiscate it immediately was not a basis for suppressing evidence. The court also declined to suppress evidence based on the alleged violation of an administrative regulation relating to failure to place a seal on the package indicating that it had been opened. (335 F.2d at p. 90.)

*United States* v. *Sohnen, supra,* 298 F.Supp. 51, is clearly in point. The court noted that the postal regulation requiring a notice to be sent to the addressee requesting authorization to open the sealed package and for the package to be returned to origin unopened if such authorization was not obtained, was violated. (*Id.* at p. 53.) The court held that the evidence should not be suppressed merely because the search of the defendant's mail was contrary to postal regulations although otherwise reasonable. Said the court: ". . . Exclusion of highly reliable and probative evidence is a sanction to be used by the courts only when there is a grave danger to clearly defined national policy. [Citations.] It is not clear whether these postal regulations were designed merely to control internal procedures or whether they

were also intended to protect addressees. Even if they were intended to protect recipients of mail from abroad, in light of the historical basis for customs searches discussed above, we cannot say that they rise to the level of national policy so as to require a *per se* rule of exclusion." (*Id.* at pp. 55-56.) Similarly in *United States* v. *Swede, supra,* 326 F.Supp. 533, the court assumed that the very same regulations in question here were violated, but this did not require suppression of the evidence "since these regulations do not 'rise to the level of national policy so as to require a *per se* rule of exclusion.' " (*Id.* at p. 536.) The same policy has been applied by a New York court, in *People* v. *Schatz* (1971) 66 Misc.2d 381 [321 N.Y.S.2d 186, 191]. *Beckley* and *Sohnen* were decided prior to the search in the instant case, *Swede* and *Schatz,* after. If defendant were charged with a federal crime it is clear that the evidence would be admissible against him in court. If the federal courts do not consider that the violation of these regulations by federal officers renders the search illegal or the evidence inadmissible, the evidence should not be inadmissible in California courts. The purpose of the exclusionary rule is to deter unlawful conduct and unreasonable searches and seizures by law enforcement officers. Since the federal courts do not enforce the exclusionary rule against federal customs officials who have violated the regulations, the adoption of a contrary rule by the California state courts would have minimal if any effect as to encouraging customs officials to observe their own regulations. Since the purposes of the exclusionary rule would not be served by applying it in the instant case, we should not do so. The federal courts have uniformly held that the violation of the regulations in question does not render the search illegal. ■ We are bound by that determination because the legality of a customs search is governed by federal, rather than state law. (*People* v. *Mitchell,* 275 Cal.App.2d 351, 355 [79 Cal.Rptr. 764], cert. den. 397 U.S. 1053 [25 L.Ed.2d 669, 90 S.Ct. 1394]; *People* v. *Eggleston,* 15 Cal.App.3d 1026, 1029 [93 Cal.Rptr. 776]; *People* v. *Superior Court (Randall)* 33 Cal.App.3d 523, 528-529 [109 Cal.Rptr. 143].)

The trial court found that the federal cases are not controlling because they fail to mention *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507]. It is argued that *Katz* sets forth a "reasonable expectation of privacy" test for interpreting the Fourth Amendment and that the regulations created such an expectation. We reject the argument that the mere failure to mention *Katz* renders the federal cases no longer controlling. *Sohnen* (1969) and *Swede* (1971) were decided subsequent to *Katz.* In *Sohnen* the court said, ". . . It is not clear whether these postal regulations were designed merely to control internal procedures or whether they were also intended to protect addressees. Even if they were intended to

protect recipients of mail from abroad, in light of the historical basis for customs searches discussed above, we cannot say that they rise to the level of national policy so as to require a *per se* rule of exclusion." (298 F.Supp. at p. 56.) This indicates that the court considered the effect of the regulations on the expectation of privacy of the addressee and found that the search was nevertheless reasonable and not in violation of Fourth Amendment rights. A more recent federal case, involving a customs search conducted after the date the regulations in question were amended, concluded, ". . . It can hardly be contended that the sender or the addressee had a reasonable expectation of privacy with regard to a large package mailed from a foreign country, which is represented to contain non-dutiable merchandise. Cf. Katz v. United States, 389 U.S. 347, 360 . . . (Harlan, J., concurring)." (*United States* v. *Doe, supra,* 472 F.2d 982, 985.) It is apparent that the federal courts have fully considered the limitations which a Fourth Amendment expectation of privacy might have on a customs search of incoming mail, and have concluded that searches like the instant one are not violative of the Constitution. We remain bound by that determination.

■ Moreover, we agree that the regulations did not create a reasonable expectation of privacy protected by the Fourth Amendment. It is common knowledge that persons entering into the United States are subject to searches of their persons, vehicles, and baggage. One could not reasonably expect that a package mailed across the borders would not similarly be subject to search. Surely no importer would reasonably believe that he can avoid examination of imported goods by customs officials merely by paying first class postage to mail the goods into the country. In effect defendant urges us to adopt the position that, an importer of marijuana, upon reading the customs and postal regulations, was entitled reasonably to assume that the government had thoughtfully provided a perfectly safe method of importing contraband into the United States. The sender of the package could fail to attach the required endorsement permitting customs examination, and the receiver of the package could safely assume that if his consent to inspect the package was not requested, the package had avoided customs examination. If, on the other hand, the addressee's permission to examine it were requested, he could refuse to give his consent, and the package would be returned to the sender. A certain proportion of the packages mailed would arrive at a receiver's address without customs examination and he could open them with impunity. We refuse to adopt such a construction of the customs regulations, which would invite "wanton and wholesale violations of our customs laws."

In *Katz* v. *United States, supra,* Mr. Justice Harlan, concurring, said: ". . . My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' " (389 U.S. at p. 361 [19 L.Ed.2d at pp. 587-588].)[2] Neither of these tests is satisfied here. We have just pointed out that even if an importer of narcotics thought that the regulations provided him a fail-safe method of bringing marijuana into the country by mail, that is not an expectation we are prepared to recognize as reasonable. There is no evidence that the sender or defendant had knowledge of these particular regulations or any actual expectation of privacy based on them. This is not a case where the defendant's subjective expectation of privacy may be assumed, such as that which a person normally expects in his home. (Cf. *Lorenzana* v. *Superior Court,* 9 Cal.3d 626, 637-638 [108 Cal.Rptr. 585, 511 P.2d 33].) As noted above, the normal expectation of a person bringing goods into the United States is that they are subject to customs search. Even if we were to indulge in the assumption that the sender was aware of the customs and postal regulations, we would likewise have to assume that he was aware of the cases which had interpreted those regulations, namely, *United States* v. *Beckley, supra,* and *United States* v. *Sohnen, supra,* which held that a search in violation of the regulations is not illegal and does not render evidence procured thereby inadmissible in court.

It is argued that the procedure used herein was a form of "entrapment" or at least of questionable public policy in that, had defendant been given an opportunity to refuse permission for a search of the package the contraband would never have been delivered into the country. ■ But it has consistently been held that it is proper for the authorities to allow a package of known contraband to be delivered to its intended recipient, for the purpose of apprehending or investigating the importers of narcotics. (*Chapman* v. *United States* (10th Cir. 1971) 443 F.2d 917, 920; *United States* v. *Galvez* (10th Cir. 1972) 465 F.2d 681, 687; *United States* v. *Beckley, supra,* 335 F.2d 86, 89-90; *United States* v. *Swede, supra,* 326 F.Supp. 533, 536; see also *United States* v. *Russell* (1973) 411 U.S. 423 [36 L.Ed. 2d 366, 93 S.Ct. 1637].) In *Chapman* the court said: "Appellants next contend that the customs agents should have seized the contraband in New York when it was first discovered and that failure to do so constituted illegal entrapment. It is permissible to allow contraband to reach its des-

[2]See also *People* v. *Edwards,* 71 Cal.2d 1096, 1104 [80 Cal.Rptr. 633, 458 P.2d 713] (". . . it appears that defendants exhibited an expectation of privacy, and we believe that expectation was reasonable . . . .").

tination. In United States v. Davis, 272 F.2d 149, 153 (7th Cir. 1959) the court said: 'To require immediate seizure of the contraband upon discovery would deprive federal officers of a most effective method of obtaining evidence against ultimate consignees, clearly a result contrary to Congressional intent.' . . . If contraband were simply seized by customs agents and disposed of, then the intended receivers of the illicit goods would go unpunished. The government, in cases such as this, does not initiate the crime. It simply monitors the crime until it can identify the participants. We see no merit in appellants' contention that the commission of the offense would have been impossible without the actions of the agents. The offense would still have been committed. Without the actions of government officials the crime would have gone undetected."

Controlled deliveries of mailed contraband have been involved in several recent California cases. (*Alvidres* v. *Superior Court,* 12 Cal.App.3d 575, 583 [90 Cal.Rptr. 682]; *Weinberg* v. *Superior Court,* 21 Cal.App.3d 1018, 1022 [99 Cal.Rptr. 166]; *People* v. *Superior Court (Marcil)* 27 Cal.App.3d 404, 408 [103 Cal.Rptr. 874]; *Weber* v. *Superior Court,* 30 Cal.App.3d 810, 813 [106 Cal.Rptr. 593]; *People* v. *Sloss, supra,* 34 Cal.App.3d 74, 79.)

█ The delivery of the packages to defendant did not relieve the People of the burden of proving at trial that defendant knew of the narcotic content and intended to exercise dominion and control over it. (See *People* v. *Mijares,* 6 Cal.3d 415, 420-422 [99 Cal.Rptr. 139, 491 P.2d 1115]; *People* v. *Showers,* 68 Cal.2d 639, 642-643 [68 Cal.Rptr. 459, 440 P.2d 939].) █ Issues relating to defendant's knowledge and intent in possessing the packages are not before the court on a motion to suppress evidence. (*United States* v. *Galvez, supra.*)

We therefore find that the trial court erred in granting the Penal Code section 1538.5 motion on the grounds stated. The order appealed from is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied November 14, 1973, and respondent's petition for a hearing by the Supreme Court was denied December 27, 1973.