**UNITED STATES of America**

**v.**

**Joseph DUFFY, Defendant.**

United States District Court
S. D. New York.
June 30, 1965.

Robert M. Morgenthau, U. S. Atty., New York City, for the United States; Otto G. Obermaier, Asst. U. S. Atty., of counsel.

Matthew H. Brandenburg, New York City, for defendant.

CROAKE, District Judge.

This is an application pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure for an order directing the return of certain property and the suppression of the use of the same as evidence against the defendant on the ground that the property was seized and obtained by illegal, unconstitutional and unreasonable means. In accordance with the order of this court dated May 6, 1965 a hearing was held on this application at which all parties had the opportunity to adduce testimony in their behalf.

 On January 25, 1965, indictment 65 Cr. 55 was filed. It charged the defendant in two counts with violating 18 U.S.C. § 545, and 26 U.S.C. §§ 5205(a) and 5604(a) (1). The sum and substance of these alleged offenses is that the defendant had in his possession 18 bottles of liquor which had been illegally imported into this country and upon which the applicable excise taxes had not been paid. The defendant alleges that the 18 bottles of liquor were discovered by Customs Port Investigators in the trunk of his automobile as a result of an unlawful search and seizure. The threshold procedural requirement for a valid search by a Customs investigator is that the investigator merely suspect that contraband or dutiable merchandise or goods have been secreted.[1] With this almost casual standard in mind, the court finds upon examination of the evidence adduced at the hearing that the testimony of the witnesses fails to establish the validity of the search.

The evidence in summary is as follows:

At approximately 9 a. m. on January 4, 1965 three Customs Port Investigators (hereinafter C.P.I.) employed by the United States Treasury Department, Customs Agency Service, in an on duty status, were proceeding south on 12th Avenue in the vicinity of Pier 45, North River, in a moving automobile. Twelfth Avenue is located on the west side of the Island of Manhattan, New York City, running underneath the elevated West Side Highway and alongside the piers of the Port of New York. C.P.I. Festa was driving the car, Acting Superintendent Hayes was seated alongside the driver, and C.P.I. Bullock was seated alone in the rear seat of the car.

While proceeding in their automobile, C.P.I. Festa and Hayes observed the defendant, dressed as a longshoreman, in a parking area approximately 30 feet in front of Pier 45, adjacent to 12th Avenue. This parking area is colloquially called the "farm" and is reserved for the use of pier employees. C.P.I. Festa stated that he observed the defendant in the company of two other men advancing toward a parked car. C.P.I. Hayes testified that "I seen the defendant standing in back of his comet car with the trunk open holding a wooden milk case for containers of milk." (Pp. 7–8 of minutes.) Investigator Hayes then had the car in which the Customs officers were driving stop about ten feet past the automobile which the defendant was standing behind. He then ordered C.P.I. Bullock " * * * to go back and investigate what was in the carton." (P. 8 of minutes.)

1. 19 U.S.C. § 482 provides in pertinent part as follows:

"Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial."

C.P.I. Bullock testified that while he was proceeding south on 12th Avenue he had not seen the defendant or the car he was standing behind. (P. 34 of minutes.) He further stated that he was ordered by Investigator Hayes to " * * get out of the car and go check the car that had the trunk open." (P. 34 of minutes.) When C.P.I. Bullock arrived, the trunk of the car was closed and, after identifying himself as a Customs Port Investigator, he asked the defendant to open the closed trunk. The defendant, apparently without comment, complied with this request from one in a position of authority. Upon opening the closed trunk, 6 bottles of liquor for which the duty had not been paid were discovered in a carton. C.P.I. Bullock then called over C.P.I. Hayes who re-examined the trunk which had been closed and found 12 additional bottles of liquor which had been brought into this country without the payment of duty. The testimony indicates that the defendant was not offered the opportunity of refusing to submit to the search of his car trunk by the investigators. C.P.I. Bullock testified that at the time he asked the defendant to open his car trunk he had no suspicion whatsoever that the trunk might contain contraband or dutiable merchandise. Apparently, Bullock was merely obeying orders from Investigator Hayes.[2]

When C.P.I. Hayes was asked whether he suspected that the trunk of the car contained dutiable merchandise or contraband, he responded in an unsure fashion: "Well, yes, I mean——." At this point he was cut off by the Assistant United States Attorney.

On direct examination, C.P.I. Hayes stated, "Well, I drove past where the car was parked about ten feet, and I ordered Officer Bullock to go back and investigate what was in the carton." (P. 8 of minutes.) [3]

In response to questions by the prosecution on cross-examination answered by a "Yes," for the first time it was indicated that Hayes instructed Bullock to investigate the trunk as well.[4] Hayes also testified that he never saw the milk box again and that no dutiable merchandise was even found in this milk box. (Pp. 47–49 of minutes.) It would appear that the instructions to Bullock was circumscribed in that he was directed to check the box only. This is demonstrated by the fact that Bullock upon opening the closed trunk for the first time did not proceed to examine all of the contents of the trunk but was satisfied with the contents of the first carton

---

2. The following testimony of C.P.I. Bullock appears at pp. 42–43 of the minutes:
"Q Mr. Bullock, up to the time that you requested or directed the defendant to open the truck of his vehicle did you know what the contents were in that car?
A No, sir.
Q Did you have any idea as to what the contents of that vehicle contained?
A No, sir.
THE COURT: The question was, 'Did you have any idea'?
MR. BRANDENBURG: Yes, sir.
Q Did you have any knowledge or any suspicion as to what was in the trunk of that vehicle?
A No, sir.
Q Did you have any idea that there was any contrabrand of any kind?
A No, I didn't.
Q Did you suspect that this defendant was carrying contrabrand in that vehicle?

A No, sir.
Q Did you have any reason to suspect that there was any merchandise that was subject to duty in the trunk of that car?
A I didn't see any.
Q You had no reason to suspect that the trunk contained any?
A No, sir.
MR. BRANDENBURG: No further questions."

3. Again on direct examination, C.P.I. Hayes stated quite clearly: "Bullock was sent back to investigate what was in the box, not to arrest anybody." (P. 10 of minutes.)

4. "Q And Bullock got out of the car in order to investigate the trunk of the vehicle and the milk box.
A Yes." (P. 16 of minutes.)

containing 6 bottles and the truck door was closed. (Pp. 37–38 of minutes.) It was Hayes who after examining the 6 bottles seized by Bullock searched the trunk of the car for additional dutiable merchandise. Bullock was merely following orders and it appears that he was under the impression that his investigation was complete upon examining the first carton.

There is testimony to the effect that both Festa and Hayes had information to the effect that longshoremen at Pier 45, North River, were engaged in illegally landing and smuggling liquor. In Bolger v. United States, 189 F.Supp. 237, 251 (S.D.N.Y.1960), aff'd sub nom. Bolger v. Cleary, 293 F.2d 368 (2d Cir. 1961), reversed on other grounds, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963); and United States v. Manoli, 61 Cr. 129 (S.D.N.Y. Apr. 14, 1961), it has been held that this type of information was sufficient to support the requisite suspicion that contraband or dutiable merchandise was being smuggled into this country by this defendant. Even though Bullock on January 4, 1965 was an employee of the Customs Service for only three months, it is almost inconceivable that he did not have the slightest suspicion that the object of his search was contraband or dutiable merchandise. What else was Bullock looking for? Even Supervisor Hayes, who had eighteen years' experience, did not give the appearance of a witness who was sure that he entertained a suspicion that the defendant had in his possession dutiable merchandise or contraband. In any event, his suspicion and instructions to Bullock concerned a milk box which was not searched by the officers.

 The court must accept the credible testimony of the Customs officers. In this connection, it is noted that the Assistant United States Attorney stated that if the defense did not call all of the Customs officers available to testify, he would. (P. 23 of minutes.) [5] It would appear from the testimony of the Customs officials that the initial search of the car trunk by C.P.I. Bullock was a capricious act and not within the provisions of 19 U.S.C. § 482 and, therefore, unlawful. The second search by Investigator Hayes, in which 12 additional bottles were found, was prompted by unlawfully obtained evidence and must fall as well as being fruit of the tainted tree. Walder v. United States, 347 U.S. 62, 64, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954), and Wong Sun v. United States, 371 U.S. 471, 484, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Furthermore, it cannot be said that the defendant acquiesced in the search just because there was no specific objection to authority raised.

"A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied. The Government has the burden of proving by clear and positive evidence that such consent was given. * * *" Channel v. United States, 285 F.2d 217, 219–220 (9th Cir. 1960); Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649–650 (1951); United States v. Smith, 308 F.2d 657, 663 (2d Cir. 1962), cert. den., 372 U.S. 906, 83 S.Ct. 717, 9 L.Ed.2d 716 (1963); United States v. Rutheiser, 203 F.Supp. 891, 893 (S.D.N.Y.1962); and United States v. Regina, 200 F.Supp. 709–710 (E.D.N.Y.1961).

In this case the Government has not sustained its burden of proving that a specific consent was given by the defendant. There is a strong possibility which has not been obviated by the testi-

5. "MR. BRANDENBURG: May I say this, Judge: Is is fair to state, Mr. Obermaier, that if the other witnesses were called, I presume that Mr. Bullock was the first one who went to speak to the defendant and that the others could add nothing else to this situation.

MR. OBERMAIER: If you don't call them I will.
MR. BRANDENBURG: All right, then I will call Mr. Festa."

mony that the defendant opened his trunk door because he thought he had no alternative but to obey the requests of the Customs officials involved.

Accordingly, the application of the petitioner is granted in all respects.

Submit order.