**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John DOE, a/k/a Francisco Rodriquez,
a/k/a Juan Velez S., Defendant-
Appellant.**

**Nos. 516, 517, Docket 72–2171, 72–2172.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 12, 1973.

Decided Jan. 24, 1973.

Certiorari Denied May 7, 1973.
See 93 S.Ct. 2160.

Thomas D. Clifford, Hartford, Conn., for defendant-appellant.

Andrew B. Bowman, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., District of Connecticut, Bridgeport, Conn., of counsel), for plaintiff-appellee.

Before LUMBARD, KAUFMAN and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

The principal issue on this appeal is the validity of a search by customs officials of a package mailed into this country from abroad. The defendant Francisco Rodriquez sought to suppress the seizure of a quantity of cocaine arising out of the search, contending that it violated both the Fourth Amendment's requirement of reasonableness and 19 U.S.C. § 482, which authorizes searches of "trunks or envelopes" when there is a "reasonable cause to suspect there is merchandise which was imported contrary to law."[1] Concluding that the instant customs search complied with both the constitutional and statutory standards and that the defendant's other contentions are without merit, we affirm the conviction on the merits.

Rodriquez, having waived trial by jury, was tried before the court on two consolidated indictments charging him with several substantive narcotics offenses and with conspiracy to commit certain of these offenses.[2] Judge Newman, in a memorandum decision, denied the motion to suppress and found the defendant guilty on the four remaining counts.[3]

On April 11, 1972, James J. O'Keefe, an experienced United States mail entry aide working in Boston, opened a large package mailed from Pereira, Colombia and addressed to Juan Velez S., one of the aliases used by the defendant,[4] at an address in Bridgeport, Connecticut. O'Keefe testified that he opened the package because it was labelled "old clothing" and from his experience such labelling often belied the true contents— new clothing, subject to a duty. Such smuggling of dutiable merchandise is a federal crime, 18 U.S.C. § 545. Upon opening the package, he discovered, attached to the inside of the top of the package, a flat metal container filled with a white crystalline powder, later deter-

---

1. 19 U.S.C. § 482 provides:

"§ 482. Search of vehicles and persons

"Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial."

2. The first indictment (B–46) contained two counts. The first count charged the defendant with knowingly and intentional-ly possessing with intent to distribute a quantity of cocaine (a schedule II narcotic) in violation of 21 U.S.C. § 841(a)(1). The second count, which was later dismissed on the government's own motion, charged the defendant with knowingly and intentionally importing a quantity of cocaine in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2(a) and (b). The second indictment (No. 13141) contained three counts. The first count charged the defendant with conspiracy, 21 U.S.C. § 846, to violate the substantive offense of possession with intent to distribute a quantity of cocaine, 21 U.S.C. § 841(a)(1). The second count charged the defendant with conspiracy, 21 U.S.C. § 963, to import a quantity of cocaine, 21 U.S.C. § 952. The third count charged the defendant with unlawful possession of marijuana, 21 U.S.C. § 844(a). On June 20, 1972, the two indictments were consolidated.

3. Judge Newman sentenced Rodriquez to concurrent four-year terms of imprisonment on Count I of Indictment B–46, and Counts I and II of Indictment No. 13141, and a concurrent three-month term on Count III of Indictment No. 13141.

4. Judge Newman specifically found that Samuel Suarez, Juan Velez and Ramiro Grajales Villa were all aliases employed by the defendant Rodriquez.

mined to be 1.1 pounds of 99% pure cocaine.

Under the direction of Customs Agent Haig M. Soghigian, one gram of the cocaine plus some innocuous white powder was placed into the metal container and reinserted into the package. On April 18, Agent Soghigian brought the package to the Bridgeport Post Office and a "Notice of Attempt to Deliver Mail" to the addressee, Juan Velez, was left at the hotel where he was registered. On April 24, the defendant appeared at the Post Office and claimed the package. A short time thereafter, customs agents arrested him as he was about to board a train to New York City. At trial there was proof that using various aliases he had successfully received packages mailed to him at other hotels, at least one from South America.

The gravamen of the appellant's constitutional claim is that since the search was based on the mere suspicion of the customs aide, reasonable cause was lacking. However, it is well settled that "A customs officer has the unique power to stop a person at an international entry point and to conduct a 'border search' without having a search warrant or even having a probable cause to believe the person has committed a crime. . . . Typically, *mere suspicion* of possible illegal activity within their jurisdiction is *enough 'cause'*. . . . This is not to say that the restrictions of the Fourth Amendment that searches and seizures may not be unreasonable are inapplicable to border stops and searches conducted by customs officials. On the contrary, border stops and searches, like all stops and searches by public officials are restricted by the requirement that they be reasonable. . . ." United States v. Glaziou, 402 F.2d 8, 12 (2nd Cir. 1968) (emphasis supplied); see Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ While this court has never expressly so held, there is a substantial body of precedent that would apply the same border-search standards "to mail coming into the country, especially where, as here, there is a representation on the package that it contains merchandise." United States v. Beckley, 335 F.2d 86, 88–89 (6th Cir. 1964). See United States v. Swede, 326 F.Supp. 533 (S.D.N.Y. 1971); United States v. Sohnen, 298 F.Supp. 51 (E.D.N.Y.1969) (mail sorting room deemed a port of entry). Under this approach, the agent's suspicion could not be considered unreasonable, and reflected more than mere caprice, see United States v. Duffy, 250 F.Supp. 900 (S.D.N.Y.1965). His experience had taught him that packages allegedly containing old clothes often contain dutiable new clothes. This was sufficient. The minor intrusion upon the privacy of international packages must yield to our government's interest in protection of its borders and its revenue.

■ A more intriguing, though no more persuasive, argument is that the instant search violates the standards set forth in 19 U.S.C. § 482, which provides in pertinent part:

> "Any of the officers or persons authorized to board or search vessels may stop, search, and examine . . any vehicle, beast, or person, on which or whom he or they shall *suspect* there is merchandise which is subject to duty . . . and to search any trunk or envelope, wherever found, in which he may have a *reasonable cause to suspect* there is merchandise which was imported contrary to law. . . ."
> (Emphasis supplied)

Rodriquez's statutory claim is based on the difference in the statute's language, i. e., vehicles, beasts, or persons may be searched on the basis of suspicion, whereas a "trunk or envelope, wherever found," may be searched if the officer has "a reasonable cause to suspect there is merchandise which was imported contrary to law. . . ." Upon this basis it is argued that the statute establishes a higher standard for letters and trunks than that required by the Fourth Amendment. The argument, however, fails to appreciate that a search of this kind is

far less intrusive than searches of individuals or of their immediate effects. See United States v. Swede, 326 F.Supp. 533, 536 (S.D.N.Y.1971). It can hardly be contended that the sender or the addressee had a reasonable expectation of privacy with regard to a large package mailed from a foreign country, which is represented to contain non-dutiable merchandise. Cf. Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Unless such packages were spot-checked, the international mails would provide a broad highway for wanton and wholesale violations of our customs laws. We see no justification for a construction of the statute that would give customs agents less leeway in preventing importation of mailed contraband than when such merchandise is imported in person.

Both Congress and the courts have deemed examination of international mail to be on a different footing from that applied to mail moving entirely within the country. See 39 U.S.C. § 3623(d); United States v. Beckley, 335 F.2d 86, 88 (6th Cir. 1964). A construction of the statutory phrase "reasonable cause to suspect" that would preclude effective enforcement of the customs laws would do violence to Congress' intent. Here the experience of the agent, when coupled with the possibility that packages marked "old clothes" are falsely labelled, was sufficient to provide "reasonable cause to suspect" within the meaning of the statute.

Rodriquez's assertion of the defense of entrapment is likewise without merit. Not only did he have the predisposition to commit the crime but, if anything, the commission of the crime was impeded rather than facilitated by the government's activity, since the effect of the government's conduct was to require him to make an affirmative effort to receive the package, which might otherwise have been delivered to him without any affirmative action on his part. United States v. Morrison, 348 F.2d 1003 (2nd Cir.), cert. denied, 382 U.S. 905,

86 S.Ct. 242, 15 L.Ed.2d 158 (1965), upon which appellant relies, merely stands for the proposition that in evaluating the validity of an entrapment defense, the appropriate inquiry should focus not only on the predisposition of the defendant but "whether, in exposing the defendant's criminality, the government agents have acted in an offensive manner or lived up to reasonably decent civilized standards for the proper use of government power." 348 F.2d at 1004. Here, the customs agents were not initiators of the offense which would have occurred in any event. Under such circumstances, the conduct of the government agents was surely permissible. Chapman v. United States, 443 F.2d 917, 919 (10th Cir. 1971); see United States v. Ortega, 471 F.2d 1350 (2nd Cir. 1972).

Having examined appellant's contentions and finding them without merit, we affirm.