## Commonwealth v. Williams

*G. Roger Markley,* Assistant District Attorney, for Commonwealth.

*Gene Kestenbaum,* for defendant.

GARB, J., November 9, 1973.—Pursuant to defendant's motion to suppress certain evidence secured as the result of a search of her premises, a hearing was held under and pursuant to the provisions of Pennsylvania Rule of Criminal Procedure 323 and, as a result thereof, we make the following

### FINDINGS OF FACT

1. On or about January 22, 1973, one Adam Adashefski was a United States Customs mail specialist employed at the mail branch of the United States Mail Customs at 201 Varick Street, New York, N.Y.

2. At the aforesaid time, it was Adashefski's responsibility to open parcels and mail received in the United States from foreign countries for delivery to addressees in the United States to determine customs duty, discover contraband, and determine compliance with customs regulations.

3. At all relevant times it was Adashefski's procedure, as per his instructions from the Customs Bureau, not to open any envelope obviously containing only a letter but to open parcels or envelopes obviously containing merchandise on a selective basis, however, opening almost all merchandise-bearing parcels coming from certain specified areas of the world including all of South America, the Far East, Germany, England and approximately 14 or 15 other selected countries.

4. On or about January 22, 1973, a certain envelope addressed to defendant herein at her residence in Solebury Township, Bucks County, Pa., with a return address from an individual in Colombia, South America, was received by Mr. Adashefski in his office.

5. The aforesaid letter was sealed and had affixed to it the appropriate postage for first class mail, but upon external examination by Adashefski, it was apparent that it contained some substance or item of merchandise other than a letter because of its bulk, thickness and feel.

6. As a result of the foregoing external examination, Adashefski opened the envelope and discovered therein a letter as well as a makeshift envelope containing a certain white powdery substance.

7. Having discovered the contents of the envelope, Adashefski did retain it and its contents and caused the white powdery substance to be analyzed and, as a result of the analysis, determined that it was cocaine.

8. The entire contents of the envelope were thereupon replaced in the envelope and the envelope sealed and it was forwarded for delivery to defendant at her residence in this county.

9. Upon its being forwarded for delivery by the

postal authorities, the Pennsylvania State Police were likewise notified of the contents of this parcel together with the fact that it was to be delivered under controlled conditions at a particular time.

10. At the time fixed for delivery, various police officers had defendant's home under surveillance and they observed as the postal authorities placed the mailed parcel in question in defendant's mailbox to the front of her residence.

11. The police officers observed as defendant exited from her residence and approached the mailbox, removing therefrom the mail parcel in question and returned with it to her home.

12. Immediately thereafter, the police officers knocked on the front door of defendant's residence which was opened by defendant, and informed her that they were police officers and placed her under arrest.

13. The police officers asked defendant where the mail parcel she had just received was, to which defendant replied that it was on the second floor of her residence and in her bedroom.

14. Thereupon one of the police officers proceeded to the office of a District Justice of the Peace, and, upon giving a sworn affidavit containing the information enumerated in the foregoing findings of fact, a search warrant was issued.

15. The search warrant was thereupon executed at the residence of defendant and as a result of a search of her bedroom, the envelope and letter, together with the makeshift envelope contained therein, were found as well as a small pile of white powder upon a night stand in her bedroom. Additionally, certain correspondence was likewise seized together with a small quantity of marijuana.

## DISCUSSION

It should be clear from the foregoing findings of fact that the central question before us is the constitutionality of the opening of this mail parcel by the customs officials in New York. It is abundantly clear that the probable cause, based upon which the search warrant was issued, derived almost entirely from the contents of this mail parcel discovered as a result of its having been opened in the customs office in New York. Thus, simply stated, in order for this search to avoid the taint of the fruit of the poisoned tree as enunciated in Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), or of the silver platter doctrine as enunciated in Elkins v. United States, 364 U.S. 206, 80 S. Ct. 1437, 4 L. Ed. 2d 1669 (1960), it must be shown that the opening and examining of the contents of this particular mail parcel in the customs office in New York was done under conditions so as to pass constitutional muster.

We are satisfied that there is no authority in Pennsylvania which dictates the result of the question before us. If the mail parcel in question had been one of domestic mail, then Commonwealth v. Dembo, 451 Pa. 1 (1973), would determine the result. However, this mail parcel, being one in international commerce entering the United States, the constitutional questions are decidedly different. Since the oft-cited dictum of Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), it is universally accepted that customs-type searches are in a different category than other or domestic searches and that the standard of reasonableness as enunciated in the Fourth Amendment to the United States Constitution has a different connotation. It was held in Henderson v. United States, 390 F. 2d 805 (9th Cir., 1967), that border searches are unique and the mere fact that a person is crossing a

border is sufficient cause for a search of his person and effects. Even mere suspicion is not required. Border searches can be conducted without probable cause, but they must be conducted reasonably. See also United States v. McDaniel, 463 F. 2d 129 (5th Cir., 1972).

In United States v. Doe, 472 F. 2d 982 (2d Cir., 1973), it was held that it is constitutional to conduct a border search without a warrant and without probable cause and upon mere suspicion only. However, the Fourth Amendment does apply to border searches and requires that they be reasonable. Under the aforesaid dogma, it was held in United States v. Doe, supra, that there is at least some authority for applying the standards of border searches to mail entering the United States from foreign countries.

United States v. Beckley, 335 F. 2d 86 (6th Cir., 1964), was a case involving the opening of a package mailed to defendant in the United States from the Panama Canal Zone. In that case, the court held that the Fourth Amendment rights applicable to domestic mail do not apply to international mail entering the United States, at least where it appears that a customs determination must be made. There is a well-established right to search persons and their effects as they enter the United States without a warrant or probable cause. The court in United States v. Beckley held that these principles should be applied to mail coming into the country, especially where there is a representation on the package that it contains merchandise. Obviously, the purpose of the search in these circumstances would be a determination of whether there is merchandise requiring the imposition of tariff taxation.

United States v. Sohnen, 298 F. Supp. 51 (E.D.N.Y., 1969), held to the same effect. In that case, a package

was mailed to defendant, a resident of the United States, from Switzerland. The package was examined at the customs office upon its entry into the United States and opened. In holding that the search of the package was not unconstitutional for lack of a warrant or for probable cause, the court held that the government has the right to search persons and merchandise as they enter the country. Customs officials have broad authority to conduct border searches without warrant and without a showing of probable cause. Although the Fourth Amendment applies to searches of mail, the standards applicable to domestic mail are not applicable to mail matter coming in from outside the country, at least where it appears that a customs determination must be made. The court held that customs examinations of mail or packages are no different from border searches. However, the court held that the governmental power to search international mail for customs purposes is not unlimited. The Constitution prohibits harsh and demeaning searches (see Henderson v. United States, supra), on mere suspicion and *perhaps* the opening of letters, as opposed to packages, without a search warrant.

In State v. Gallant, 308 A. 2d 274 (Me., 1973), the Supreme Court of the State of Maine held that a search of a letter by customs officials was not unconstitutional if there was reasonable cause to suspect that the envelope contained contraband rather than just a message. In this case, it was determined that there was reasonable cause to suspect that there was contraband based upon the fact that the letter was sent from Viet Nam, a known source of drugs, as well as from the physical bulk of the letter itself. In United States v. Swede, 326 F. Supp. 533 (S.D.N.Y., 1971), it was held that a first class envelope mailed to defendant from Switzerland could be opened constitu-

tionally where it was obvious that the envelope contained merchandise, thus converting it from a first class letter containing merely a message to a package containing merchandise which may be either contraband or subject to duty regulation.

We are satisfied that the foregoing principles clearly enough indicate the result in the case before us. We do not decide herein whether a customs official may open a letter, i.e., an envelope containing merely a message, without probable cause and the issuance of a search warrant. Although the mail item opened in this case was, in fact, an envelope for which sufficient postage had been paid for first class mail, we are satisfied that it was, in fact, a parcel containing merchandise. See United States v. Swede, supra. Upon external examination, which we deem to be appropriate, it was determined from its size, configuration and bulk that the envelope obviously contained something other than a written message on a piece of paper. Having determined that that was the case, we think that it was appropriate for the customs official to cause an examination of the contents of the envelope to be made either for the purpose of discovering contraband, materials which are forbidden entry into the United States, or to determine whether there was merchandise subject to the payment of a tariff tax. There was nothing on the envelope to indicate that it contained merchandise or the nature of the merchandise and, therefore, this determination could only be made upon an examination of the contents of the envelope itself. The envelope had obviously been mailed from a country known to be a source of contraband drugs which fact would give added impetus to the customs agent to examine the contents of this parcel.

As the foregoing indicates, we have found that the

search was one conducted within constitutional dimension. Although it was conducted without a warrant and without probable cause, we have found nothing to indicate that it was in any respect unreasonable. We likewise find that it was not conducted in any respects in violation of any Federal law. Rather, we perceive that this search is specifically authorized under 19 U.S.C. §482. Although that section of the Act of Congress appears to make a distinction in the standards to be applied to a search of an individual or his effects at the border and the search of an envelope or trunk entering the country, we are satisfied that it would be anomalous indeed to impose a stricter constitutional standard regarding searches of envelopes and trunks as opposed to that of individuals. See United States v. Swede, supra, and United States v. Doe, supra. Therefore, we determine that the search conducted was one in conformity with both the Federal law and constitutional mandates.

Having found that the search of the mail parcel was constitutional, the probable cause, therefore, used for the purpose of securing a search warrant was likewise sufficient to satisfy the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964), and Spinelli v. United States, 393 U.S. 410 (1969). As indicated in finding of fact no. 13, defendant told the officers that the envelope and its contents were in her bedroom. We do not determine herein whether that was a constitutionally secured statement, because we believe there was sufficient evidence from proper sources to establish probable cause for the issuance of a search warrant. See Commonwealth v. Thomas, 444 Pa. 436 (1971), and Commonwealth v. Soychak, 221 Pa. Superior Ct. 458 (1972). The search warrant having been constitutionally secured, we are satisfied that the officers had the right to seize the items which

they did. The items of correspondence were specifically enumerated in the search warrant itself and could appropriately be seized. The search was one, obviously, for drugs, and therefore we are satisfied that the seizure of the small quantity of marijuana was likewise appropriate: Commonwealth ex rel. Stoner v. Myers, 199 Superior Ct. 341 (1962).

For the foregoing reasons, we determine that the motion to suppress must be denied, dismissed and overruled and hereby enter the following

## ORDER

And now, to wit, November 9, 1973, it is ordered, directed and decreed that the motion to suppress evidence is denied.