Melvin D. Glass, J.
At 3:30 p.m. on August 5, 1974, the defendant, an employee of Braniff Airlines, was seen by a Kennedy Airport customs agent, getting off a bus at an employees’ parking lot, some one and one-half miles from the Braniff terminal. The bus route starts at the lot and ends there after making a tour of the terminals at JFK. The lot, which is in the center of the airport, is bordered on three sides by the airfield and on one side by a public highway.
The defendant was seen to approach his car while carrying a used Braniff Airlines flight bag, which was about 18 inches high and 12 inches wide. It was zippered closed. The customs officer asked the defendant to identify himself. The defendant produced a card showing that he worked for Braniff Airlines. In response to the agent’s questions, the defendant stated that the bag had nothing in it and that he had found it at a bus stop. The officer directed the defendant to open the bag. It was found to contain two pocketbooks which had been stolen from an incoming air shipment. The defendant was placed under arrest by the customs agent who, at the direction of the United States Attorney, turned the case over to the Port Authority Police. The defendant moved to suppress the introduction of the physical evidence contending that his constitutional rights had been violated.
During the course of his testimony which was offered in opposition to the motion, the customs officer indicated that he did not know the defendant, had no information about him, did not know if the defendant had worked that day and had not seen him before he got off the bus. He stated that he knew that the defendant was not coming from a foreign country because the bus that he had left was one used exclusively by airport employees. The agent testified that he approached the defendant because of the bag he was carrying and felt that he could search anyone at the airport whom he saw carrying an object.
There is no contention by the prosecution that the customs officer had probable cause to search the defendant. The People instead rely upon the Federal statute, section 482 of title 19 of the United States Code, which permits "Any of the officers or persons authorized to board or search vessels [to] stop, search *19 and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast or otherwise”.
The crucial word in the statute is "suspect”. Can the customs agent search anyone he "suspects” or is his authority limited? Is the location of the search significant? The People argue that the entire airport is a point of international entry and therefore the customs agent has authority to search anyone at the airport on mere suspicion without anything more. The court rejects this contention.
It is obvious that legislation, whether it be Federal or local, must conform to constitutional standards, otherwise it will fall. The protection against unreasonable searches is paramount to the Federal statute in question. Although section 482 of title 19 of the United States Code makes it appear as though mere suspicion is sufficient to justify a search by a customs officer, the word "reasonable” must be read into the law in order to preserve its constitutionality. A customs officer is justified in acting under this statute when he has "reasonable suspicion” to conduct a search. The Federal cases sustain this interpretation of the statute. (See United States v Beck, 483 F2d 203 [3d Cir, 1973], cert den 414 US 1132; United States v Speed, 497 F2d 546 [5th Cir, 1974]; United States v Caraway, 474 F2d 25 [5th Cir, 1973].)
It is reasonable for a customs agent to search everyone entering the country. The so-called "border search” must be utilized to detect those who would smuggle items into the country in an attempt to avoid the payment of lawful duty. An inspection at the point of entry, at the time of entry into the country is reasonable per se. (United States v McDaniel, 463 F2d 129 [5th Cir, 1972].) The same would be true where an individual or vehicle was seen to cross into the country and was kept under constant surveillance. In United States v Lincoln (494 F2d 833 [9th Cir, 1974]), the car in question had traveled some 30 miles within the United States after it had crossed the border from Mexico. The court sustained the search because the Federal agents never lost sight of the vehicle. This was not so in United States v Portillo (469 F2d 907 [9th Cir, 1972]), where the agents lost track of the vehicle *20 for some three hours. The evidence was suppressed in that matter.
Problems arise when an attempt is made, as in the instant case, to expand the border doctrine to include searches made a distance from the border at a time subsequent to entry. If there is no proximity to the border, absent other factors, a customs agent stands on equal footing with any other law enforcement agent. He needs probable cause to conduct a search. If, however, there is a basis for concluding that the search is close enough in time and place to the border to come within the purview of section 482 of title 19 of the United States Code, then the customs officer need only have "reasonable suspicion”. The court in United States v McGlone (394 F2d 75, 78 [4th Cir, 1968]) expressed this proposition by pointing out that "the reasonableness of a search conducted by a Customs Agent generally depends upon such factors as the distance of the search from the point where the goods could be introduced by the suspect into the United States, the time that has elapsed since the suspect has had an opportunity to bring in the goods, and the circumstances upon which the officers base their suspicions.” (Also, see, Alexander v United States, 362 F2d 379 [9th Cir, 1966].)
The United States Supreme Court in Almeida-Sanchez v United States (413 US 266), ruled a search unlawful where it was made by a roving border patrol on a road some 25 air miles north of the Mexican border and there was no reasonable suspicion.
In order to sustain the instant search it would be necessary for this court to rule that the search took place sufficiently close to the port of entry to eliminate the need for probable cause and that the customs agent had reasonable suspicion to search the defendant. In the unreported case of People v Barlotts, decided on August 16, 1974, Queens Criminal Court Judge M. Marvin Berger ruled that all of Kennedy Airport constituted a port of entry, one in which the customs agents can act under section 482 of title 19 of the United States Code. This court does not have to reach that issue. The question of location need not be decided in view of the fact that the People have failed to sustain their burden of proof with respect to the search. The customs officer did not have reasonable suspicion to believe that contraband could be found in the bag which the defendant was carrying.
The instant case is distinguishable from United States v *21 Beck (483 F2d 203, supra), where the court sustained the search by customs agents of employees at a pier in Philadelphia. Ruling that employees were not immune from a border search merely because they had not entered the country, the court found reasonable suspicion where two pier workers were seen leaving the pier, carrying large blue canvas bags. It was obvious that one bag was extremely heavy and that it contained more than the usual lunch pail and helmet ordinarily carried by pier workers. The defendant in the instant case was not seen coming from a cargo area nor was the bag in question suspicious by its very nature.
The prosecutor points to the case of United States v Glaziou (402 F2d 8 [2d Cir, 1968]) as calling for the instant search to be sustained. In Glaziou, customs officers saw two men about to leave an enclosed pier area where a French ship had docked that day. They could only have come from the ship. The defendant, upon request, displayed his French passport with "trembling hand” at which time the agent saw a bulge around the defendant’s waist. The agent squeezed the bulge, felt a lump and pulled up the defendant’s shirt. Five plastic bags filled with heroin were uncovered. The court held that the search was reasonable.
The search in Glaziou could be justified upon the ground that it was truly a border search. The mere fact that the defendant was coming from a foreign ship was in and of itself a sufficient basis for the officer to search him. With the "trembling hand” and the observation of the bulge around the waist, more than reasonable suspicion was spelled out.
Two cases which appear to be stronger from the prosecution standpoint than the instant case, nevertheless resulted in the court suppressing the evidence. In United States v Diemler (498 F2d 1070 [5th Cir, 1974]), the defendant was stopped at a temporary checkpoint 55 to 60 miles north of the Mexican border. According to the border patrol agent, the defendant, when flagged down for routine questioning, appeared to be nervous and was reluctant to pull down his car window. The officer directed the defendant to the side of the road and together with another agent, conducted a search of the vehicle, uncovering a large cache of marijuana. The court held that the search was not based upon reasonable suspicion.
The court in United States v Duffy (250 F Supp 900 [SDNY, 1965]) suppressed the evidence where customs agents saw the defendant, who was dressed like a longshoreman, in a parking *22 area about 30 feet in front of a New York City pier from where there had been thefts. The parking area had been reserved for the use of pier employees. The defendant who was seen putting a wooden milk case into the trunk of a car, was ordered to open the trunk. The trunk contained bottles of liquor which had been brought into the country unlawfully. The court held the search to be unlawful.
The customs officer in the instant case believed that he had authority to search the defendant merely because he was on airport property. The law is otherwise. Without deciding the issue of whether the parking lot in question was within the border area so that the probable cause requirement to search gives way to reasonable suspicion, this court holds that the facts in the case do not rise to the standard required by the law to constitute a lawful search. The evidence is suppressed.